LISA K. DALGEWICZ (HEARTEN), PLAINTIFF v. EDWARD J. DALGEWICZ, DEFENDANT

No. COA03-1641

(Filed 21 December 2004)

**1. Process and Service— trial date—service at known address**

An equitable distribution defendant received adequate notice where he was duly served with a civil summons and complaint; plaintiff's counsel took every reasonable step to serve defendant properly, including sending correspondence by certified mail to an address that was provided by defendant's counsel, kept on record at the clerk's office, and used by defendant for other correspondence; and a court employee served defendant notice of the trial court calendar via approved methods.

**2. Divorce— equitable distribution—classification and valuation of property**

An equitable distribution judgment was remanded where the trial court did not properly classify and value a residence, a vehicle, and a contract. Whether the court's method of distribution was unreasonable or arbitrary could not be discerned without proper classification, valuation, and listing of all of the property owned by the parties.

**3. Divorce— equitable distribution—attorney fees**

The trial court did not abuse its discretion by awarding attorney fees to the plaintiff pursuant to N.C.G.S. § 50-21(e) in an equitable distribution case where the evidence supported the court's findings that defendant had refused to attend hearings, provide responses to discovery, or pay financial obligations as ordered.

Appeal by defendant from order entered 14 January 2003, judgment entered 31 March 2003, and order entered 29 September 2003, by Judge Marvin P. Pope, Jr., in Buncombe County District Court. Heard in the Court of Appeals 11 October 2004.

*The McDonald Law Office, P.A., by Diane K. McDonald, for plaintiff-appellee.*

*James McElroy & Diehl, P.A., by William K. Diehl, Jr., and Preston O. Odom, III, for defendant-appellant.*

DALGEWICZ v. DALGEWICZ

[167 N.C. App. 412 (2004)]

TIMMONS-GOODSON, Judge.

Edward J. Dalgewicz ("defendant") appeals from a judgment of equitable distribution and orders for sanctions and attorney's fees in favor of Lisa K. Dalgewicz ("plaintiff"). For the reasons discussed herein, we affirm in part and reverse and remand in part.

The facts and procedural history pertinent to the instant appeal are as follows: Defendant and plaintiff were married on 5 April 1985. The couple resided in Asheville, North Carolina, until their separation in the spring of 2001. Following their separation, defendant moved to Florida and plaintiff moved to California.

On 23 April 2001, plaintiff filed a complaint against defendant, requesting that the trial court award her custody of the couple's two children, child support, post-separation support, alimony, equitable distribution, a restraining order, and attorney's fees. On 13 June 2001, defendant filed an answer and counterclaim, as well as interrogatories and requests for production. In his answer and counterclaim, defendant requested that the trial court deny plaintiff equitable distribution, grant defendant custody of the children, and order plaintiff to pay child support.

On 12 July 2001, plaintiff and defendant entered into a consent order whereby the couple's Merrill Lynch account was assigned to plaintiff for the payment of marital debt. The consent order required that defendant pay plaintiff $2,107.00 in child support, and it continued a 10 May 2001 order preventing defendant's waste of his bonus payments.

On 1 August 2001, defendant's counsel filed a motion to withdraw, which the trial court granted in an order filed 23 August 2001. On 17 August 2001, defendant and plaintiff entered into a second consent order, whereby defendant agreed to "borrow the money to pay the deficiency produced by the forced sale of [the residence located at] 9 Hickory Ridge[,]" and to hold plaintiff "harmless for losses she may incur for his failure to make full payment of the loan." Following the dismissal of his counsel on 23 August 2001, defendant retained counsel in both North Carolina and Florida.

On 10 October 2001, plaintiff filed an equitable distribution affidavit, which she later amended on 10 December 2001 and 14 January 2003. On 30 October 2001, the trial court entered an order directing defendant to file an equitable distribution affidavit and directing both parties to attend a conference to resolve the issues of the case within

sixty days of the completion of discovery. On 8 November 2001, the trial court granted defendant's motion for extension of time to file his equitable distribution affidavit, and on 21 November 2001, defendant filed the equitable distribution affidavit.

On 4 December 2001, the trial court held a hearing to determine whether to award plaintiff post-separation support and attorney's fees. While defendant was not present at the hearing, he was represented by counsel. In an order filed 14 December 2001, the trial court found that plaintiff was a dependent spouse and that defendant earned a $250,000.00 base salary plus $500,000.00 in bonuses. The trial court also found that, pursuant to defendant's employment contract with Associated Packaging Enterprises, Inc. ("APEI"), defendant would receive $1.1 million to $1.3 million in non-reoccurring bonuses. The trial court concluded that plaintiff was entitled to a writ of possession to the home and property located at 268 Racquet Club Road,[1] and the trial court ordered defendant to "pay the monthly mortgage payment on the property and make any and all arrears current within sixty days." The trial court further ordered that defendant pay temporary post-separation support to plaintiff in the amount of $8,000.00 per month, as well as reasonable attorney's fees related to the action.

On 14 January 2002, the trial court ordered that the residence located at 268 Racquet Club Road be listed for sale within two weeks for "$1.1 million, the estimated value according to [plaintiff]," and that all outstanding discovery be produced within thirty days. On 24 January 2002, the trial court issued an order finding as fact that defendant had not made a spousal support payment required by the 14 December 2001 order, and that defendant had "neither made the mortgage current, nor made any mortgage payments as they c[a]me due." Based upon these findings of fact, the trial court concluded that defendant was in contempt of court, and the trial court ordered defendant to appear for sentencing in district court on 11 February 2002. The trial court further ordered that plaintiff was entitled to attachment of defendant's income from his contract with APEI, and the trial court directed defendant to be prepared at sentencing "to [s]how [c]ause why said remedy should not be instituted against him."

1. At the time of their separation, plaintiff and defendant also owned a residence located at 9 Hickory Ridge in Asheville and mentioned above. According to the trial court order, the 9 Hickory Ridge residence was sold in November 2001, and defendant was required to pay approximately $90,000.00 to satisfy the deficiency between the sale price and the existing mortgage on the residence.

On 8 March 2002, defendant's North Carolina counsel filed a motion to withdraw, citing defendant's refusal to compensate counsel for services rendered in the matter. The trial court granted counsel's motion on 25 April 2002. Following the motion to withdraw, defendant filed an emergency motion to continue depositions scheduled for 18 March 2002 and 19 March 2002, citing the requirement that defendant's Florida counsel associate with local counsel in the matter. On 18 March 2002, defendant gave notice of appearance for new North Carolina counsel, whose services were limited to "the sole purpose of assisting non-North Carolina licensed attorney[.]"

On 18 March 2002, the trial court held a hearing on all pending issues. Present at the hearing were plaintiff, her counsel, defendant's Florida counsel, and defendant's new North Carolina counsel. Following the hearing, the trial court issued an order for the arrest of defendant for failure to appear at the 18 March 2002 hearing. The trial court continued the previous requirement that defendant make current the mortgage on 268 Racquet Club Road and the previous attachments on defendant's APEI paycheck.

On 23 October 2002, both defendant's North Carolina counsel and Florida counsel moved the trial court to withdraw from representation. Defendant's Florida counsel requested that "all further pleadings, notices, and correspondence" be directed to defendant via the following address:

EDWARD J. DALGEWICZ c/o APEI, 900 South US Highway One, Suite 207, Jupiter, FL 33477

On 30 October 2002, the trial court granted defendant's remaining counsel's motions to withdraw. The same day, plaintiff filed a motion for sanctions against defendant, alleging that defendant had "never appeared" for a hearing in the matter, had failed to appear at the court-ordered mediation, and had failed to appropriately respond to discovery. Plaintiff advised the trial court that defendant's counsel had recently moved the trial court to withdraw, and that "it is anticipated by [plaintiff] that [defendant] will fail to show for the equitable distribution trial." Plaintiff requested that the trial court award plaintiff costs and attorney's fees and dismiss defendant's claim for equitable distribution. Plaintiff's counsel certified that a copy of the motion was served upon defendant's counsel via facsimile.

On 14 January 2003, the trial court filed an "Order For Sanctions" in the case, in which the trial court found as fact that defendant failed

to participate in court-ordered mediation, failed to appear at any hearing in the matter, was thus held in contempt, and had several orders for his arrest issued against him. The trial court further found that an equitable distribution trial had been scheduled and defendant had failed to appear at the hearing regarding sanctions. Based upon these findings of fact, the trial court concluded that plaintiff "is entitled to be awarded the sanctions against [defendant] as set out in her Motion filed with this Court[,]" and the trial court ordered that defendant's equitable distribution claim be dismissed.

On 31 March 2003, the trial court entered judgment on plaintiff's equitable distribution claim. The trial court first noted that defendant was not present at the 14 January 2003 hearing, nor was an "attorney or other agent on his behalf." The trial court then entered the following pertinent findings of fact:

16. [T]hat the evidence and the facts of this matter are such that an equal division of the marital estate would not be equitable; that specifically:

    . . . .

    c. The Plaintiff actively negotiated the contract with APEI . . . which contains those benefits and rights that are marital assets[.]

    d. The Plaintiff was supportive and actively involved in the development of the career of the Defendant[.]

    e. Despite the entry of Orders requiring the Defendant to pay the mortgage on the marital home located at 268 Racquet Club Road . . . the Defendant refused and never despite being held in contempt of this Court made one mortgage payment; that as a consequence, the parties were notified of a foreclosure of said real estate [and] the Plaintiff worked very hard to find a buyer who ultimately acquired the property by paying off the mortgage held by BB&T in the amount of $730,000[.]

17. [T]hat the actions of the Defendant have caused the Plaintiff to expend a substantial amount of money; that the Defendant has refused to attend hearings, provide responses to discovery, [and] pay his financial obligations as ordered by the Court . . . that he has been inattentive to his obligations in this matter, causing a great deal of time for the Court and the

DALGEWICZ v. DALGEWICZ

[167 N.C. App. 412 (2004)]

> Plaintiff; that the actions of the Defendant constitute those acts prohibited by NCGS §50-21(e), and will entitle the Plaintiff herein to recover from the Defendant reasonable expenses and damages incurred because of these acts, including reasonable attorney's fees which shall be submitted to the Court.

Based upon its findings of fact, the trial court entered the following pertinent conclusions of law:

4. That the Plaintiff is entitled to an equitable distribution of the marital estate.

5. That the contract entered into by the Defendant with APEI . . . is a marital asset as are those benefits and monies flowing from it . . . [and] these rights of the Plaintiff shall survive any anticipated corporate changes in identity or organization . . . or conversion of Defendant's rights under the contract[.]

6. The Defendant is guilty of waste of a marital asset, to wit: [the residence located at] 268 Racquet Club Road[.]

Based in part on these findings of fact and conclusions of law, the trial court entered the following pertinent orders:

1. The Defendant shall pay to the Plaintiff . . . $470,000 for his waste of [the residence located at] 268 Racquet Club Road[.]

2. The Defendant shall pay to the Plaintiff . . . one-half all bonuses received by him or to be received by him for the years 2001, 2002, 2003, and 2004[.]

3. The Defendant shall pay to the Plaintiff . . . $55,000 which is one-half of the money used by the Defendant to pay credit card bills immediately following separation from the bonuses paid from the contract [with APEI.]

4. The Defendant shall pay to the Plaintiff . . . $35,000 for his waste of the vehicle, [the] Lincoln Navigator driven by the Plaintiff at the time of separation, and which is subject to repossession.

. . . .

7. The Defendant shall pay to the Plaintiff . . . $20,253.48 for his actions which violated NCGS §50-21(e).

DALGEWICZ v. DALGEWICZ

[167 N.C. App. 412 (2004)]

On 10 April 2003, defendant filed a motion to set aside the 31 March 2003 judgment and the 14 January 2003 order pursuant to N.C. Gen. Stat. § 1A-1, Rules 59 and 60. Defendant contended that he had no notice of the equitable distribution hearing and was thus entitled to relief from the judgment because of the irregularities, mistake, inadvertence, surprise, and excusable neglect connected to the action. Defendant further asserted that he was entitled to relief from the order for sanctions because he had no notice of that proceeding either.

On 29 September 2003, the trial court issued an order denying defendant's Rule 59 and Rule 60 motions, concluding in pertinent part that defendant had been provided sufficient notice and was neglectful and inattentive to his case. Defendant appeals.

We note initially that defendant's brief contains arguments supporting only fifty-three of his original ninety-two assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2004), the thirty-nine omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendant for appeal.

The dispositive issue on appeal is whether the trial court erred in its equitable distribution judgment. Defendant argues that he did not receive sufficient notice of the equitable distribution hearing and that the equitable distribution judgment is not supported by sufficient findings of fact or conclusions of law. Although we conclude that defendant received proper notice of the equitable distribution hearing, we reverse and remand the case for a new trial because we also conclude that the trial court erred in its equitable distribution judgment.

*I. Service of Process*

**[1]** "Notice and an opportunity to be heard prior to depriving a person of his property are essential elements of due process of law which is guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, section 17, of the North Carolina Constitution." *McDonald's Corp. v. Dwyer*, 338 N.C. 445, 448, 450 S.E.2d 888, 891 (1994). "Whether a party has adequate notice is a question of law." *Trivette v. Trivette*, 162 N.C. App. 55, 58, 590 S.E.2d 298, 302 (2004). "Adequate notice is defined as 'notice reasonably calculated, under all circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 58-59, 590 S.E.2d at 302 (quoting *Randleman v. Hinshaw*, 267 N.C. 136, 140, 147 S.E.2d 902, 905 (1966) (citations omitted)).

In the instant case, the record indicates that defendant was properly served with a civil summons and complaint on 23 April 2001. Defendant does not deny that plaintiff's original and amended complaints were served upon him properly, nor does defendant deny that he was properly served with a civil summons as well as the trial court's 25 July 2002 order, which advised the parties that the matter was set for an equitable distribution trial on 4 November 2002. Instead, defendant asserts that because he did not receive actual notice of the equitable distribution trial scheduled for 14 January 2003, the trial court's order should be reversed. We disagree.

The record reflects that defendant was actively involved in the litigation of this matter until the withdrawal of his North Carolina and Florida counsel in October 2002. In his motion to withdraw, defendant's Florida counsel expressly requested that

all further pleadings, notices, and correspondence in this matter be directed to the Defendant at the following address: EDWARD J. DALGEWICZ c/o APEI, 900 South US Highway One, Suite 207, Jupiter, FL 33477.

The Jupiter, Florida, address provided by defendant's Florida counsel was the same address listed as defendant's "current address" in a motion for admission *pro hac vice*, filed on behalf of defendant's Florida counsel on 31 August 2001, as well as the same address used by defendant to receive correspondence from financial banks and the Department of Motor Vehicles. Defendant never provided the trial court with another address, and plaintiff's counsel testified that her attempts to serve defendant at other addresses were returned as unclaimed.

Following defendant's Florida counsel's motion to withdraw, plaintiff's counsel sent the trial court a letter regarding the withdrawal of counsel and referring to the equitable distribution hearing that was then set for 4 November 2002. Defendant was sent a copy of the letter via certified mail, return receipt requested, at the Jupiter, Florida, address provided by defendant's Florida counsel. Upon receipt of the letter, defendant signed and returned the certified receipt to plaintiff, indicating that he had received the letter.

On 12 December 2002, the Office of the Clerk of the 28th Judicial District prepared the trial calendar for the week of court that included the parties' equitable distribution trial. Wanda Ingle ("Ingle"), Judicial Assistant for the 28th Judicial District, testified that she sent defendant a copy of the trial calendar at the Jupiter, Florida, address provided by defendant's Florida counsel. Although Ingle addressed the calendar "c/o API" rather than "c/o APEI," Ingle testified that nothing was returned to the trial court stating that the calendar was undeliverable, and that if an envelope had been returned it would have been placed in the case file. Furthermore, Ingle testified that she complied with the typical procedure of her office, and sent the trial court calendar notice to the last address provided to the trial court by defendant or his counsel. We note that other correspondence sent to and received by defendant at the Jupiter, Florida, address did not include the indication "c/o APEI" at all.

"[I]t has long been the practice in this State that when a party to an action does not have counsel, a copy of each calendar on which his action appears calendared for trial is mailed to him at the last address available to the Clerk." *Laroque v. Laroque*, 46 N.C. App. 578, 581, 265 S.E.2d 444, 446, *disc. review denied*, 300 N.C. 558, 270 S.E.2d 109 (1980). In *Thompson v. Thompson*, 21 N.C. App. 215, 217, 203 S.E.2d 663, 665, *cert. denied*, 285 N.C. 596, 205 S.E.2d 727 (1974), this Court stated the oft-cited rule that

A party to a legal action, having been duly served with process, is bound to keep himself advised as to the time and date his cause is calendared for trial for hearing; and when a case is listed on the court calendar, he has notice of the time and date of the hearing.

In support of this assertion, we cited *Cahoon v. Brinkley*, 176 N.C. 5, 7-8, 96 S.E. 650, 651 (1918), where our Supreme Court noted as follows:

This Court has held that "When a man has business in court, the best thing he can do is to attend it[,]" and this has been often quoted and reaffirmed. It has also been held that "A litigant must pay the same attention to a case in court that any one would give to business of importance." Even when he has employed counsel, he cannot abandon all attention to the case, and in this case the defendant well knew he had no counsel. It has also been held that one who has been made party to an action by summons is fixed with notice of all orders and proceedings taken in open court.

(citations omitted).

In the instant case, we conclude that defendant received adequate notice of all hearings in the matter. Defendant was duly served with a civil summons and complaint, and plaintiff's counsel took every reasonable step to serve defendant properly, including sending correspondence via certified mail to an address provided by defendant's counsel, kept on record at the Clerk's office, and used by defendant to receive other forms of correspondence. An employee of the 28th Judicial District served defendant notice of the trial court calendar via those methods approved by the Buncombe County Trial Court Administrator's office. This Court has previously concluded that "[a] [d]efendant will not be permitted to frustrate the trial of the case or avoid the duties imposed by orders entered by merely declining or refusing to attend trial." *Thompson*, 21 N.C. App. at 217, 203 S.E.2d at 665. Accordingly, defendant's first argument is overruled.

## II. Equitable Distribution Judgment

[2] Defendant also argues that the trial court erred in the equitable distribution judgment. Defendant asserts that the trial court's findings of fact do not support its determinations regarding defendant's employment, the residence located at 268 Racquet Club Road, and plaintiff's vehicle. Defendant further asserts that the trial court's findings of fact do not support the conclusions of law regarding the unequal division of the marital estate and the imposition of attorney's fees.

The trial court is required to conduct a three-step process during an equitable distribution hearing. *Beightol v. Beightol*, 90 N.C. App. 58, 63, 367 S.E.2d 347, 350, *disc. review denied*, 323 N.C. 171, 373 S.E.2d 104 (1988). "These steps are: (1) to determine which property is marital property, (2) to calculate the net value of the property, fair market value less encumbrances, and (3) to distribute the property in an equitable manner." *Id.* This Court has previously recognized that "[a]ttempts by one or both spouses to deplete the marital estate or dispose of marital property after the date of separation but before distribution may be considered by the court when making the division, and any conversion of marital property for individual purposes may be charged against the acting spouse's share." *Sharp v. Sharp*, 84 N.C. App. 128, 130, 351 S.E.2d 799, 800 (1987). However, in *Sharp*, we noted that N.C. Gen. Stat. § 50-20(a) "effectively provides for the 'freezing' of the marital estate as of the date of the parties' separation. Marital assets, distributed thereafter, are valued as of that date." *Id.* In determining the value of the property, the trial court must consider

the property's market value, if any, less the amount of any encumbrance serving to offset or reduce the market value. *Alexander v. Alexander*, 68 N.C. App. 548, 550-51, 315 S.E.2d 772, 775 (1984). The trial court is required to make specific findings regarding the net value of each item, determining the net market value as of the date the parties separated for each item distributed. *See* N.C. Gen. Stat. § 50-20(c), (j) (2003).

In the instant case, the trial court made the following findings of fact with respect to the residence located at 268 Racquet Club Road:

10. The Plaintiff testified that on the date of the separation, the Plaintiff and the Defendant lived in a home located at 268 Racquet Club Road . . . . That on December 14, 2001, an Order was entered . . . which found the Plaintiff to be a dependent spouse and ordered among other things that the Defendant pay the mortgage payments for 268 Racquet Club Road . . . . That the Defendant failed and refused to make the mortgage payments . . . . That following the hearing of the matter the Defendant was found in contempt . . . . Further, this Court has found that the nonpayment of the mortgage on the property located at 268 Racquet Club Road would constitute waste by the Defendant of a marital asset. That said real estate was sold just prior to the closing on the foreclosure; that in fact, the bank agreed to continue the foreclosure hearing to allow for the sale of the real estate; that said property was [sold] for $730,000 which resulted in a substantial loss to the Plaintiff; that the real-estate is currently re-listed for sale some four months later for $1,200,000 . . . that there was a loss of $470,000 which was caused by the Defendant's contempt of Court orders and his refusal to pay the mortgage.

Based upon this finding of fact, the trial court ordered that defendant pay plaintiff $470,000 "for his waste of a marital asset; that being the home at 268 Racquet Club Road[.]" We conclude that the trial court erred.

As discussed above, to enter a proper equitable distribution judgment, prior to distributing the assets the trial court must classify and value all property owned by the parties at the date of separation. "And in doing all these things the court must be specific and detailed enough to enable a reviewing court to determine what was done and its correctness." *Carr v. Carr*, 92 N.C. App. 378, 379, 374

S.E.2d 426, 427 (1988). In the instant case, although the trial court classified the residence located at 268 Racquet Club Road as a "marital asset," the trial court's findings of fact demonstrate that the trial court failed to properly value the residence prior to distribution. Although we recognize that "[u]nless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value[,]" *Highway Comm. v. Helderman*, 285 N.C. 645, 652, 207 S.E.2d 720, 725 (1974), in the instant case, there is no indication in the record that plaintiff testified to the value of the residence on the date of the parties' separation. Instead, the trial court's findings reflect that the trial court was apprised of the value of the residence four months later, when the residence was being sold for the second time following the date of separation.

With respect to plaintiff's vehicle, the trial court made the following finding of fact:

14. That at the date of separation, the Plaintiff drove a vehicle, a Lincoln Navigator which is valued at the time of the trial at $35,000; that the Defendant refused to make the payments on said vehicle, despite the fact that the Plaintiff had no income; that said vehicle is subject to repossession.

Based upon this finding of fact, the trial court made the following order with respect to the vehicle:

4. The Defendant shall pay to the Plaintiff the sum of $35,000 for his waste of the vehicle, [the] Lincoln Navigator driven by the Plaintiff at the time of the separation, and which is subject to repossession.

We conclude that the trial court erred with respect to the Lincoln Navigator as well. Plaintiff and defendant concede that the Lincoln Navigator was leased property. Because the vehicle was leased, neither plaintiff nor defendant had any ownership or equity interest in it, and therefore the trial court was prohibited from classifying and valuing it as a marital asset. *Fox v. Fox*, 103 N.C. App. 13, 18, 404 S.E.2d 354, 356 (1991). Furthermore, as discussed above, to enter a proper equitable distribution judgment, the trial court must specifically and particularly classify and value all assets and debts maintained by the parties at the date of separation. However, the trial court in the instant case made no findings of fact regarding the classification of the Lincoln Navigator or its value on the date of separation.

We further conclude that the trial court erred with respect to defendant's contract with APEI. Although in its equitable distribution judgment the trial court classified the contract as a marital asset and detailed the provisions of the contract and the circumstances surrounding its formation, the trial court failed to value the contract at the date of separation and to make those ultimate findings necessary in an equitable distribution judgment.

Following proper classification and valuation of the parties' assets, the trial court is required to divide and distribute the marital property equally, "unless the court determines in the exercise of its discretion that such a distribution is inequitable." *Beightol*, 90 N.C. App. at 63, 367 S.E.2d at 350. In the instant case, the trial court determined that equal distribution was inequitable, and thus awarded plaintiff what appears to be a greater share of the marital estate. However, in light of our foregoing conclusions, we are unable to determine whether the trial court properly determined that equal distribution was inequitable in the instant case. Without the benefit of proper classification, valuation, and listing of all the property owned by the parties, we cannot discern whether the trial court's method of distribution was unreasonable or arbitrary. Although we recognize that "[t]his Court is hesitant to remand equitable distribution cases and even more hesitant to reverse an equitable distribution judgment and grant the appellant a new trial[,]" *Glaspy v. Glaspy*, 143 N.C. App. 435, 444, 545 S.E.2d 782, 788 (2001), because of the number and degree of errors committed by the trial court in the instant case, we conclude a new trial is required. Therefore, we reverse the trial court's equitable distribution judgment, and we instruct the trial court to hear arguments and receive evidence from both parties on remand, in order to address the errors discussed above and to properly identify, classify, and value the parties' property as required by statutory law and case law.

### III. Attorney's Fees

**[3]** Independent of its equitable distribution of the parties' property, the trial court ordered that defendant pay plaintiff $20,253.48 for those actions which violated N.C. Gen. Stat. § 50-21(e). On appeal, defendant asserts that the trial court abused its discretion in awarding plaintiff attorney's fees. We disagree.

N.C. Gen. Stat. § 50-21(e)(1) (2003) allows the trial court to impose sanctions upon a party in the form of attorney's fees where

The party has willfully obstructed or unreasonably delayed, or has attempted to obstruct or unreasonably delay, discovery proceedings, including failure to make discovery pursuant to G.S. 1A-1, Rule 37, or has willfully obstructed or unreasonably delayed or attempted to obstruct or unreasonably delay any pending equitable distribution proceeding[.]

This Court has previously held that "whether to impose sanctions and which sanctions to impose under G.S. § 50-21(e) are decisions vested in the trial court and reviewable on appeal for abuse of discretion." *Crutchfield v. Crutchfield*, 132 N.C. App. 193, 195, 511 S.E.2d 31, 34 (1999). "In applying an abuse of discretion standard, this Court will uphold a trial court's order of sanctions under section 50-21(e) unless it is 'manifestly unsupported by reason.' " *Id.* (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

In the instant case, the trial court made the following pertinent findings of fact with regard to its imposition of sanctions:

15. That the parties were ordered to appear at a mediation of the financial matters on July 25, 2002; that the Plaintiff appeared with her attorney; that the Defendant did not appear[.]

. . . .

17. That a review of the record of this matter shows that the actions of the Defendant have caused the Plaintiff to expend a substantial amount of money; that the Defendant has refused to attend hearings, provide responses to discovery, pay his financial obligations as ordered by the Court as evidenced by the Orders in the file holding . . . Defendant in contempt and the necessity of the Plaintiff to seek the attachment of the Defendant's income from APEI; that he has been inattentive to his obligations i[n] this matter, causing a great deal of time for the Court and the Plaintiff[.]

The trial court's findings of fact are supported by competent evidence in the record detailing plaintiff's efforts to seek attachment of defendant's wages and defendant's failure to appear at any hearing in the matter, including court-ordered mediation. In light of the trial court's findings of fact and the record before us, we are unable to conclude the trial court's determination was manifestly unsupported by reason. Therefore, we hold that the trial court did not err in awarding plaintiff attorney's fees.

*IV. Conclusion*

In light of the foregoing conclusions, we affirm the portion of the trial court's judgment awarding attorney's fees, but we reverse and remand for a new equitable distribution trial.

Affirmed in part; reversed and remanded.

Chief Judge MARTIN and Judge HUDSON concur.