MELVA BANKS WILSON, Plaintiff v. DANNY JAMES WILSON, Defendant

No. COA10-1517

(Filed 16 August 2011)

## 1. Child Custody and Support—support order—impermissibly modified defendant's support obligation

The trial court erred in a child support case by entering an order which impermissibly modified defendant's support obligation. The trial court erroneously computed increases in defendant's salary and applied those increases to payments over an eighteen-year period without a finding of a substantial change of circumstances.

## 2. Child Custody and Support—support obligation—language of agreement unambiguous

Defendant's argument in a child support case that he was not required to pay child support beyond October 2004 because the younger son was not in good academic standing was overruled. Because the younger son was still enrolled in school and did finish his degree requirements in May 2005, the unambiguous language of the incorporated agreement required that defendant continue to pay child support from November 2004 through May 2005.

## 3. Preservation of Issues—not alternative basis to support order—failure to cross-appeal—arguments dismissed

Neither of the issues plaintiff presented in her appellee brief in a child support case, if meritorious, would have provided an alternative basis for upholding the trial court's judgment ordering defendant's payment of child support arrearages. To properly present these issues for appellate review, plaintiff should have cross-appealed from the trial court's order. Plaintiff's arguments were dismissed.

Appeal by defendant from order entered 21 June 2010 by Judge David A. Leech in Pitt County District Court. Heard in the Court of Appeals 23 May 2011.

*Mills & Bryant, LLP, by Cynthia A. Mills, for plaintiff-appellee.*

*Sutton Law Offices, P.A., by David C. Sutton, for defendant-appellant.*

MARTIN, Chief Judge.

Plaintiff and defendant married on 2 June 1972. Two sons were born during the marriage, one on 22 October 1979 and one on 27 October 1981. The parties later separated and entered into a separation agreement, drafted by plaintiff's attorney, dated 25 June 1987. Defendant was not represented by an attorney. On 13 June 1988, a judgment of absolute divorce was entered and the separation agreement was incorporated into the judgment. The incorporated agreement provides, in relevant part, the following:

### III.  Child Support

It is further agreed and understood that the non custodial parent shall pay to the custodial parent for the support and maintenance of the said minor children of the marriage, the sum of Five Hundred and no/100 Dollars ($500.00) per month, said payments beginning on the 5th day of July, 1987, and a like sum being due and payable on the same day of each successive calendar month thereafter.

### IV.  Termination of Support

. . . .

C. If any child of the parties shall be enrolled in college, technical school or trade school, the summer after graduation from high school, in good academic standing, and desires to continue his education past high school, then the payments specified in this agreement for the maintenance and support and education of the child shall be continued beyond his high school graducation [sic] or until he sooner completes his undergraduate education or course of study and earns an appropriate academic degree or withdraws from school.

### V.  Additional Child Support

It is understood and agreed between the parties that the non custodial parent may receive bonuses and/or salary increases from that party's employment from time to time. The non custodial parent does agree to pay to the custodial parent for the support and maintenance of the minor children born of the marriage twenty-five percent (25%) of all such bonuses and/or salary increases each years beginning on December 5th of each year in which he has an increase and continue each month thereafter in addition to the child support in Paragraph III.

In April 2005, plaintiff filed a verified Motion for Order to Show Cause and Order Holding Defendant in Contempt in Pitt County District Court. She contended defendant had violated the child support provisions of the incorporated agreement by failing to pay the full amount of child support owed based on his bonuses and/or salary increases, by reducing the amount of the support payments after November 2002 and terminating payments after October 2004, and by failing to pay his share of the medical expenses of the parties' children.

At the hearing, plaintiff testified that, in July 1987, defendant began paying her $500 per month in child support. In December 1987, defendant increased the monthly amount to $525, and each December thereafter, defendant increased the monthly amount by $25. By November 2002, defendant was paying plaintiff $850 per month. In December 2002, defendant decreased his monthly payment to $425, which, according to a finding in the trial court's order, occurred upon the older son's graduation from college. Defendant paid plaintiff $425 per month until October 2004, when he made his last payment.

Following the hearing, the trial court computed 25% of defendant's yearly gross salary increases, beginning in 1987 and continuing until May 2005, to determine the increased amount of child support defendant owed each year, and ordered that defendant pay plaintiff a total of $23,921 for past due child support; that defendant pay plaintiff $3700 for her attorney's fees; and that defendant pay interest on those amounts from the date of the docketing of the judgment until the judgment is paid. Defendant appeals from the trial court's order.

---

[1] Defendant initially contends the trial court erred by entering an order which impermissibly modified his child support obligation. Under the circumstances of this case, we are constrained to agree.

N.C.G.S. § 50-13.4(c) provides that

> [p]ayments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

N.C. Gen. Stat. § 50-13.4(c) (2009). "[A]n order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by

either party . . . ." N.C. Gen. Stat. § 50-13.7(a) (2009). "These principles apply equally to child support agreements between the parties that have been incorporated into a court order." *Beamer v. Beamer*, 169 N.C. App. 594, 596, 610 S.E.2d 220, 222 (2005) (citing *Walters v. Walters*, 307 N.C. 381, 386, 298 S.E.2d 338, 342 (1983)). "[M]odification of a child support order involves a two-step process. The court must first determine a substantial change of circumstances has taken place; only then does it proceed to . . . calculate the applicable amount of support." *Meehan v. Lawrance*, 166 N.C. App. 369, 380, 602 S.E.2d 21, 28 (2004) (alteration and omission in original) (internal quotation marks omitted).

This Court has held a clause in an order providing for an automatic annual increase in monthly child support payments based on the percentage increase of the consumer price index unenforceable, recognizing such a clause "is at odds with North Carolina statutory and case law." *Falls v. Falls*, 52 N.C. App. 203, 219, 278 S.E.2d 546, 557, *disc. review denied*, 304 N.C. 390, 285 S.E.2d 831 (1981). In *Falls*, we noted that the order "allows future changes in support payments without any showing of changed circumstances of the parents." *Id.* It was "not sufficient that there is a proviso that conditions the increase on the children's need at the time the increase goes into effect since the income of the parents is also a relevant factor under G.S. 50-13.4(c)." *Id.; see also Snipes v. Snipes*, 118 N.C. App. 189, 199-200, 454 S.E.2d 864, 870 (1995) (applying *Falls* and holding that an incorporated separation agreement ordering automatic child support increases based on the consumer price index was void).

The incorporated agreement in this case provides automatic annual increases in child support based on defendant's salary and fails to consider the needs of the children or other factors contained in N.C.G.S. § 50-13.4(c). To determine the amount of the increases in child support, the trial court computed annual percentage increases in defendant's salary for eighteen years, beginning in 1987. We note that "an increase in income alone is not enough to prove a change of circumstances to support [modification of] a child support obligation." *Thomas v. Thomas*, 134 N.C. App. 591, 595-96, 518 S.E.2d 513, 516 (1999); *Greer v. Greer*, 101 N.C. App. 351, 355, 399 S.E.2d 399, 402 (1991). Defendant contends, and we agree, that by computing increases in defendant's salary and applying those increases to payments over an eighteen-year period without a finding of a substantial change of circumstances, the trial court impermissibly modified the child support order in this case. We therefore reverse the trial court's

judgment ordering that defendant pay child support arrearages in the amount of $23,921. Having done so, we need not address defendant's remaining arguments related to this issue.

**[2]** Defendant also contends he was not required to pay child support beyond October 2004 because the younger son was not in "good academic standing." Defendant testified that he believes "good academic standing" means enrolled as a full-time student and earning at least a "C" average each semester. However, we note that "[t]he effect of the agreement is not controlled by what one of the parties intended or understood." *Grady v. Grady*, 29 N.C. App. 402, 403-04, 224 S.E.2d 282, 283 (1976); *see Fucito v. Francis*, 175 N.C. App. 144, 150, 622 S.E.2d 660, 664 (2005) (The trial court has the authority "to construe or interpret an ambiguous consent judgment" and should "consider normal rules of interpreting or construing contracts."), *appeal after remand*, 184 N.C. App. 377, 646 S.E.2d 441 (2007) (unpublished), *disc. review denied*, 362 N.C. 234, 659 S.E.2d 440 (2008). Furthermore, "[i]f the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Helms v. Schultze*, 161 N.C. App. 404, 409, 588 S.E.2d 524, 527 (2003). Here, the trial court determined that, because the younger son "was still enrolled in school and did finish his degree requirements in May 2005," the unambiguous language of the incorporated agreement required that defendant continue to pay child support from November 2004 through May 2005. Defendant's argument is therefore overruled. However, because the trial court's calculation of arrearages from November 2004 through May 2005 was based on annual increases in defendant's salary, we must remand this case for recalculation of any arrearages during that period.

**[3]** In plaintiff's appellee brief, she attempts to argue that the trial court erred "in determining the ten year statute of limitations barred collection of a child support arrearage existing on a date within ten years of the filing of the Motion" and "in determining the child support obligation was cut in half when the oldest child was no longer entitled to child support." N.C.R. App. P. 10(c) provides, in relevant part,

> Without taking an appeal, an appellee may list proposed issues on appeal in the record on appeal based on any action or omission of the trial court that was properly preserved for appellate review and that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.

**WILSON v. WILSON**

[214 N.C. App. 541 (2011)]

Neither of the issues plaintiff presents in her appellee brief, if meritorious, would provide an alternative basis for upholding the trial court's judgment ordering defendant's payment of child support arrearages in the amount of $23,921. To properly present these issues for appellate review, plaintiff should have cross-appealed from the trial court's order. *See Bd. of Dirs. v. Rosenstadt*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (Aug. 2, 2011) (No. COA10-1190) (noting that "[t]he new Rule 10(c) is similar to the old Rule 10(d)" and that "[r]evised Rule 28(c), like former Rule 28(c), permits an appellee to 'present issues on appeal based on any action or omission by the trial court that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.' " (quoting N.C.R. App. P. 28(c)); *Harllee v. Harllee*, 151 N.C. App. 40, 51, 565 S.E.2d 678, 684 (2002) ("Whereas cross-assignments of error under Rule 10(d) are the proper procedure for presenting for review any action or omission of the trial court which deprives the appellee of an *alternative* basis in law for *supporting* the judgment, order, or other determination from which appeal has been taken; the proper procedure for presenting alleged errors that purport to show that the judgment was erroneously entered and that an altogether different kind of judgment should have been entered is a cross-appeal."); *Mann Contr'rs, Inc. v. Flair with Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 776, 522 S.E.2d 118, 121 (1999) (holding that, because "[n]either of the cross-assignments of error brought forward in plaintiff-appellee's brief, if sustained, would provide an alternative basis for upholding the $36,000 judgment in this case," "[i]n order to properly present the alleged errors for appellate review, plaintiff should have cross-appealed from the trial court's judgment"). Accordingly, we do not address plaintiff's issues on appeal.

Affirmed in part, reversed in part, and remanded.

Judges STEPHENS and THIGPEN concur.