An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1347
NORTH CAROLINA COURT OF APPEALS

Filed:  7 October 2014

KIMBERLY ANN FLEMING,
    Plaintiff,

v.                                      Gaston County
                                        No. 07 CVD 4408
DOUGLAS WADE FLEMING,
    Defendant.


Appeal by plaintiff from order entered 4 June 2013 by Judge James A. Jackson in Gaston County District Court.  Heard in the Court of Appeals 9 April 2014.

> *Church Watson Law, PLLC, by Seth A. Glazer and Kary C. Watson, for plaintiff-appellant.*

> *Arthurs & Foltz, LLP, by Douglas P. Arthurs and Joy M. Chappell, for defendant-appellee.*


DAVIS, Judge.


Kimberly Ann Fleming ("Plaintiff") appeals from the trial court's child custody, child support, equitable distribution, and alimony order.  On appeal, she argues that the trial court erred by (1) failing to comply with the requirements of N.C. Gen. Stat. § 50-20; (2) failing to appropriately calculate the income of Douglas Wade Fleming ("Defendant") for purposes of

determining his child support obligation; and (3) failing to award alimony to her despite finding that she was a dependent spouse, Defendant was a supporting spouse, and Defendant had engaged in marital misconduct. After careful review, we vacate and remand for further proceedings.

## Factual Background

The parties were married on 22 June 2001 and separated on 12 September 2007, shortly after Plaintiff learned that Defendant was involved in an extramarital affair. Plaintiff and Defendant subsequently divorced. The parties have two minor children together, twin daughters born in 2001.

On 24 September 2007, Plaintiff filed an action against Defendant for child custody, child support, post-separation support, alimony, and equitable distribution. Defendant filed an answer and counterclaims for child custody and equitable distribution on 29 November 2007. On 13 December 2007, the trial court entered an order requiring Defendant to continue to pay the first and second mortgages on the marital home, health insurance for the parties, car expenses, taxes, and for Plaintiff's cellular phone service "in lieu of post-separation support" to her. A temporary custody order awarding primary

physical custody of the children to Plaintiff was entered on 25 July 2008.

Defendant owns North Carolina Mohawk Tire Company d/b/a Mr. Nobody ("Mr. Nobody"), a tire and automotive business. Prior to the parties' marriage, Defendant acquired an interest in Mr. Nobody by purchasing 5 of the outstanding 30 shares of stock in the business. During the course of the parties' marriage, Defendant acquired the remaining 25 shares of Mr. Nobody using marital funds.

Mr. Nobody has two locations, and during their marriage, the parties purchased the two parcels of land where the business operates. Mr. Nobody pays rent to the parties for the use of both properties. Defendant is employed by Mr. Nobody and received monthly income from the business throughout the course of the marriage. During the marriage, Mr. Nobody paid for numerous personal expenses of the parties, including the cost of their vehicles and the insurance and taxes on those vehicles, monthly gas expenses, cell phones for the family, and for insurance and taxes relating to both Mr. Nobody locations.

The parties' respective claims for child custody and support, equitable distribution, and alimony were heard in Gaston County District Court in February 2012. On 4 June 2013,

the trial court entered an order (1) giving the parties joint legal custody of the minor children and Plaintiff primary physical custody; (2) requiring Defendant to make monthly child support payments to Plaintiff; (3) ordering Defendant to make a distributive cash award to Plaintiff; and (4) denying Plaintiff's request for alimony. Plaintiff gave timely notice of appeal to this Court.

## Analysis

### I. Equitable Distribution

Plaintiff's first argument on appeal is that the trial court erred in the equitable distribution portion of its order by failing to comply with the statutory requirements set forth in N.C. Gen. Stat. § 50-20. Specifically, Plaintiff contends the trial court erred by failing to make findings regarding the classification or value of numerous items of property before distributing them in its order, including the residence at 5034 Stone Ridge Drive; the Fleetwood Southwind motorhome; the parties' household goods, furniture, furnishings, and personal property; the Harley Davidson Sportster; three four-wheelers; a dirt bike; and the parties' bank accounts, retirement accounts, investment accounts, and credit card debt. We agree.

> Our review of an equitable distribution order is limited to determining whether the

trial court abused its discretion in distributing the parties' marital property. Accordingly, the findings of fact are conclusive if they are supported by any competent evidence from the record.

However, even applying this generous standard of review, there are still requirements with which trial courts must comply. Under N.C.G.S. § 50-20(c), equitable distribution is a three-step process; the trial court must (1) determine what is marital and divisible property; (2) find the net value of the property; and (3) make an equitable distribution of the property.

*Robinson v. Robinson*, 210 N.C. App. 319, 322, 707 S.E.2d 785, 789 (2011) (citations, quotation marks, and brackets omitted). Thus, in order to enter a proper equitable distribution judgment, the trial court must first "specifically and particularly classify and value all assets and debts maintained by the parties at the date of separation" and in doing so, "be specific and detailed enough to enable a reviewing court to determine what was done and its correctness." *Id*. at 323, 707 S.E.2d at 789 (citations, quotation marks, and emphasis omitted).

Here, the trial court distributed various property to the parties without first classifying or valuing those assets. *See Wirth v. Wirth*, 193 N.C. App. 657, 664, 668 S.E.2d 603, 608-09 (2008) ("A trial court must value all marital and divisible

property in order to reasonably determine whether the distribution ordered is equitable." (citation, quotation marks, and ellipses omitted)); *Cunningham v. Cunningham*, 171 N.C. App. 550, 556, 615 S.E.2d 675, 680 (2005) ("[W]hen no finding is made regarding the value of an item of distributable property, a trial court's findings are insufficient even if a determination is made with respect to the percentage of a distributable property's value to which each party is entitled."). By distributing certain items of property without classifying or valuing them, the trial court also disregarded its responsibility to calculate the total net value of the marital estate. *See Robinson*, 210 N.C. App. at 323, 707 S.E.2d at 789-90 (explaining that failure to make finding as to total net value of marital estate renders equitable distribution order incomplete).

With regard to the parties' residence at 5034 Stone Ridge Drive, the trial court ordered that the residence be placed on the market and sold pursuant to the parties' stipulation and that the net proceeds — after the mortgage and equity line were satisfied — be divided equally between the parties. Although this Court has recognized "the trial court's power to order the sale of marital assets as part of an equitable distribution," it

has also recognized that the trial court must first value the property before distributing it. *See Wall v. Wall*, 140 N.C. App. 303, 307-08, 536 S.E.2d 647, 650 (2000) (holding that trial court did not err in ordering sale of marital home because it was classified, valued, and then distributed).

Because the trial court's equitable distribution order distributes property to the parties without proper findings as to the classification or value of the property, we must vacate the equitable distribution order and remand for a new trial so that the trial court may "hear arguments and receive evidence from both parties . . . in order to address the errors discussed above and to properly identify, classify, and value the parties' property as required by statutory law and case law." *Dalgewicz v. Dalgewicz*, 167 N.C. App. 412, 424, 606 S.E.2d 164, 172 (2004), *see also Robinson*, 210 N.C. App. at 326, 707 S.E.2d at 791.

While Plaintiff also contends that the trial court's distribution of the parties' property was not equitable because the trial court made an unequal distribution in favor of Defendant without considering the statutorily required factors set forth in N.C. Gen. Stat. § 50-20(c), she bases this argument on the unequal distribution of that property which the trial

court actually valued. However, because the trial court failed to value much of the parties' property before distributing it, we are unable to determine whether the distribution was, in fact, unequal. *See Dalgewicz*, 167 N.C. App. at 424, 606 S.E.2d at 172 (explaining that this Court could not determine whether trial court's allegedly unequal distribution was inequitable "[w]ithout the benefit of proper classification, valuation, and listing of all the property owned by the parties"). Therefore, we vacate the equitable distribution order and remand for a new hearing so that the trial court may hear evidence and enter an order properly classifying, valuing, and distributing the parties' property. [1]

## II. Child Support

Plaintiff's second argument on appeal is that the trial court erred in its calculation of Defendant's income for purposes of determining his child support obligation. The North Carolina Child Support Guidelines ("the Guidelines") "apply as a rebuttable presumption in all legal proceedings involving the

---

[1] We note our concern as to the 14-month delay between the conclusion of the equitable distribution hearing and the entry of the trial court's equitable distribution order and "strongly advise against lower courts allowing such a significant lapse of time to occur between the hearing date and the entry of [the equitable distribution] order." *Wright v. Wright*, ___ N.C. App. ___, ___, 730 S.E.2d 218, 222 (2012).

child support obligation of a parent . . . ." *Holland v. Holland*, 169 N.C. App. 564, 567, 610 S.E.2d 231, 234 (2005) (citation and quotation marks omitted). This Court reviews a trial court's child support order for abuse of discretion. *Id.* "To support a reversal, an appellant must show that the trial court's actions were manifestly unsupported by reason." *Head v. Mosier*, 197 N.C. App. 328, 332, 677 S.E.2d 191, 195 (2009) (citation and quotation marks omitted).

Pursuant to the Guidelines, "[c]hild support calculations . . . are based on the parents' current incomes at the time the order is entered." Form AOC-A-162, Rev. 1/11. With regard to a parent's income from self-employment or operation of a business, the Guidelines provide, in pertinent part, that

> [g]ross income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation, is defined as gross receipts minus ordinary and necessary expenses required for self-employment or business operation. . . . In general, income and expenses from self-employment or operation of a business should be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. In most cases, this amount will differ from a determination of business income for tax purposes.
>
> Expense reimbursements or in-kind payments (for example, use of a company car,

free housing, or reimbursed meals) received by a parent in the course of employment, self-employment, or operation of a business are counted as income if they are significant and reduce personal living expenses.

*Id.*

Here, the trial court made the following findings regarding Defendant's income:

18. Defendant is employed by North Carolina Mohawk Tire Co., Inc., of which he is the sole owner, and Defendant's gross monthly income is Seven Thousand Ninety-Seven Dollars and Sixty Cents ($7,097.60), which excludes various items paid on Defendant's behalf by the business which augment his gross monthly income.

19. Defendant's federal income tax returns show the following income (2011 income tax returns were not completed as of trial):

   a. In 2008, Defendant's total taxable income was $139,013.00

   b. In 2009, Defendant's total taxable income was $166,020.00

   c. In 2010, Defendant's total taxable income was $172,378.00.

The trial court then calculated Defendant's child support obligation under the Child Support Guidelines by utilizing the sum of $7,097.60 as his gross monthly income and ordered him to make payments of $1,036.00 in child support to Plaintiff per month. The sum of $7,097.60 is the figure reported on

Defendant's amended affidavit of financial standing and includes $5,416.66 in "wages/salary," $1,305.94 in income from rent payments, and $375.00 in health insurance. Although a party's financial affidavit is competent evidence on which the trial court may base its findings regarding that party's income, *Parsons v. Parsons*, ___ N.C. App. ___, ___, 752 S.E.2d 530, 533 (2013), we are troubled by the court's seemingly inconsistent findings concerning Defendant's gross income.

In its findings, the trial court noted Defendant's taxable income as identified by his federal tax returns for the years 2008, 2009, and 2010 as $139,013.00, $166,020.00, and $172,378.00, respectively. The trial court found, however, that Defendant's gross monthly income at the time of trial in February of 2012 was $7,097.60 — which converts to an annual income of $85,171.20. In determining that Defendant's monthly income was $7,097.60, the trial court did not address the sizable difference between Defendant's past income as shown on his individual income tax returns and the substantially lower figure it found in its order. *See* Form AOC-A-162, Rev. 1/11 (explaining that child support is based on parents' current income, "should be verified through documentation of both current and past income," and that "[d]ocumentation of current

income must be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period").

Moreover, in its finding determining Defendant's gross monthly income to be $7,097.60, the trial court specified that this sum "excludes various items paid on Defendant's behalf by the business which augment his gross monthly income." As stated above, the Guidelines require a trial court to include expense reimbursements or in-kind payments that a party receives in the course of employment, self-employment, or the operation of a business if these payments are "significant and reduce personal living expenses." *Id.*

Here, while the trial court recognized that Mr. Nobody paid for "various items" for Defendant and that such payments increased Defendant's income, it failed to account for that increase in its calculation of his income. Thus, given that the trial court (1) explicitly stated that its income calculation for Defendant excluded payments made by Mr. Nobody that augmented his income; and (2) made consecutive findings concerning Defendant's income that showed — without explanation — a substantially different income amount, we cannot conclude that the trial court properly calculated Defendant's income

pursuant to the Child Support Guidelines. *See McFarland v. Justus*, 113 N.C. App. 107, 109, 437 S.E.2d 668, 670 (1993) ("When findings are actually antagonistic, inconsistent or contradictory such that the reviewing court cannot safely and accurately decide the question, the judgment cannot be affirmed."). As such, we remand for findings regarding Defendant's actual income at the time of the child support hearing and for the entry of a child support order using Defendant's actual income. *See Holland*, 169 N.C. App. at 568, 610 S.E.2d at 235 (reversing and remanding child support order where findings were insufficient to support trial court's calculation of party's income).[2]

**III. Denial of Alimony**

---

[2] We note that Defendant attempts to argue in his brief that the trial court erred in ordering him to pay one-half of the children's extracurricular activity expenses. However, Defendant's argument is not properly before this Court. *See* N.C.R. App. P. 10(c) (explaining that where appellee fails to cross-appeal, its arguments are limited to "any action or omission of the trial court that was properly preserved for appellate review and that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken"). Thus, in order to have properly preserved this issue for appellate review, Defendant was required to file a cross-appeal from the trial court's order. *Wilson v. Wilson*, 214 N.C. App. 541, 546, 714 S.E.2d 793, 796 (2011).

Plaintiff's final argument on appeal is that the trial court erred in denying her request for alimony despite making findings that (1) Plaintiff is a dependent spouse; (2) Defendant is a supporting spouse; and (3) Defendant engaged in acts of illicit sexual behavior. We agree.

The trial court is authorized to make an award of alimony to a dependent spouse "upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors." N.C. Gen. Stat. § 50-16.3A(a) (2013). "If the court finds that the supporting spouse participated in an act of illicit sexual behavior, as defined in G.S. 50-16.1A(3)a., during the marriage and prior to or on the date of separation, then the court *shall* order that alimony be paid to a dependent spouse." *Id*. (emphasis added). A party's entitlement to alimony is reviewed *de novo*. *Barrett v. Barrett*, 140 N.C. App. 369, 371, 536 S.E.2d 642, 644 (2000).

Here, the trial court made the following relevant findings of fact regarding Plaintiff's alimony claim:

> 59. Plaintiff is the "dependent spouse" as that term is defined in N.C.G.S. § 50-16.1A, is actually substantially dependent on Defendant for her maintenance and support and is substantially in need of maintenance and support from Defendant. Plaintiff has

begun to work again, however, and the distributive award set forth herein is made in contemplation of providing Plaintiff with some form of support.

60. Defendant is the "supporting spouse" as that term is defined in N.C.G.S. § 50-16.1A, is capable of paying the alimony award set forth herein and should pay alimony to Plaintiff as set forth herein.

61. For the last two years of the parties' marriage, and prior to their separation, Defendant had an affair with Traci Toney Hanna, to whom Defendant is now married.

62. Defendant's affair with Traci Toney Hanna included illicit sexual behavior between Defendant and Traci Toney Hanna, as defined by N.C.G.S. 50-16.1A(3)(a).

63. Plaintiff did not condone Defendant's sexual intercourse with Traci Toney Hanna.

After making the above findings of fact, the trial court entered the following conclusion of law:

17. Despite Defendant's illicit sexual behavior with Traci Toney Hanna, Plaintiff has, as of the trial in this cause, received a sufficient amount and duration of maintenance from Defendant, which includes payments of Plaintiff's housing expenses, gasoline, car expenses and health insurance and this Court does not award alimony to Plaintiff.

By finding that Plaintiff is the dependent spouse, Defendant is the supporting spouse, and Defendant engaged in illicit sexual behavior yet nevertheless denying Plaintiff

alimony, the trial court disregarded the mandate of N.C. Gen. Stat. § 50-16.3A(a). *See Morningstar Marinas/Eaton Ferry, LLC v. Warren Cty.*, ___ N.C. App. ___, ___, 755 S.E.2d 75, 79 (2014) ("Our appellate courts have consistently held that the use of the word 'shall' in a statute indicates what actions are required or mandatory.").

In denying Plaintiff's claim for alimony, the trial court explained its belief that she had "received a sufficient amount and duration of maintenance from Defendant which includes payments of Plaintiff's housing expenses, gasoline, car expenses, and health insurance . . . ." While such a finding could warrant a conclusion that Plaintiff was not entitled to *retroactive* alimony, the trial court's determination that Plaintiff is a dependent spouse — by definition — means that at the time of trial, Plaintiff continued to be "actually substantially dependent upon [Defendant] for . . . her maintenance and support or . . . substantially in need of maintenance and support from [Defendant]." N.C. Gen. Stat. § 50-16.1A(2) (2013). Because the trial court also concluded that Defendant was a supporting spouse who had engaged in illicit sexual behavior, it was required to award alimony to Plaintiff and make specific findings of fact setting forth "the

reasons for its amount, duration, and manner of payment." *See* N.C. Gen. Stat. § 50-16.3A(a)-(c). Accordingly, we must also vacate the portion of the 4 June 2013 order concerning alimony and remand to the trial court so that it may enter an award of alimony, supported by the statutorily required findings setting out its reasons for the amount, duration, and manner of payment of the alimony award.

## Conclusion

For the reasons stated above, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.

Judges ELMORE and McCULLOUGH concur.

Report per Rule 30(e).