BRIGITTE G. HELMS, Plaintiff v. PAUL SCHULTZE, Defendant

No. COA02-1439

(Filed 2 December 2003)

**1. Child Support, Custody, and Visitation— support—prior consent order—income of new spouse—not considered**

The income of plaintiff's new husband was properly excluded as irrelevant in a post-majority support action because the plain language of the consent order obligated only the parties.

**2. Child Support, Custody, and Visitation— support—post-majority—college enrollment—findings**

The court's finding in a post-majority child support action that one of the children was enrolled in college classes at the time of trial was supported by the evidence.

**3. Child Support, Custody, and Visitation— support—psychological and medical expenses—prior consent order**

The court did not abuse its discretion in a post-majority support action by ordering defendant to reimburse plaintiff for medical, psychological, and psychiatric expenses which defendant had refused to pay in violation of the plain language of the parties' consent order.

**4. Child Support, Custody, and Visitation— support—post-majority—college expenses—ability to pay—methodology**

The trial court's methodology for determining the parties' ability to pay college expenses in a post-majority child support action was not unsupported by reason and was not an abuse of discretion.

Appeal by defendant from judgment entered 20 March 2002 by Judge Joseph J. Williams in Union County District Court. Heard in the Court of Appeals 8 September 2003.

*Baucom, Claytor, Benton, Morgan and Wood, P.A., by Richard F. Kronk, for defendant-appellant.*

*Perry, Bundy, Plyler & Long, L.L.P., by H. Ligon Bundy, for plaintiff-appellee.*

ELMORE, Judge.

Paul Schultze (defendant) appeals from a judgment requiring him to pay his ex-wife Brigitte G. Helms (plaintiff) the principal amount of $76,758.48 as reimbursement for plaintiff's overpayment of certain college and medical expenses incurred by their two sons, which expenses were anticipated and deemed the responsibility of the parties by a previous court order entered several years earlier in connection with the parties' divorce. For the reasons discussed herein, we affirm.

Plaintiff and defendant were married on 27 November 1976. Two children were born of their marriage: Greg, born 13 November 1977, and Pierre, born 30 April 1979. While living in Connecticut, the parties separated. Thereafter, on 19 December 1988, the Connecticut Superior Court entered an order (the Connecticut Order) which addressed, *inter alia*, the parties' responsibilities concerning payment of (1) future college expenses for the then-minor children, and (2) the children's present and future medical expenses. Regarding future college expenses, the Connecticut Order provided as follows:

> And that, to the extent that they are reasonably financially able, the parties shall be solely responsible for the education of the parties' minor children and shall pay any and all expenses incurred by the children during their attendance at a junior college, a four (4) year college, or their respective equivalents.

> And that, in the event that the parties are in dispute as to each party's ability to pay for the children's college education, the matter shall be submitted to and determined by the [Connecticut Superior Court]. In making its determination, the Court shall consider the assets, liabilities, and income of both the Plaintiff and the Defendant, and the contributions being made by the parties toward the children's support.

> . . . .

> And that, the parties['] obligation with respect to [payment of the children's college expenses] shall continue with respect to the children despite the children's attaining majority.

> . . . .

With respect to the children's medical expenses, the Connecticut Order provided:

And that, [defendant] represents that his employer provides him with a group hospital and medical plan and that the children are presently covered by such a plan. [Defendant] shall, at his expense and at no cost to [plaintiff], maintain such hospital and medical plan, or the equivalent thereof, with respect to the children, so long as he is obligated to support such children, as provided in this decree.

And that, in addition to the foregoing obligation of [defendant], the [defendant] shall pay, for the benefit of the children, all unreimbursed reasonable medical, optical, surgical, hospital, psychiatric, psychological, and nursing expenses, the cost of prescriptive drugs[] . . . so long as he is obligated to support the children . . . as provided in this decree; provided, however, that no psychiatric, psychological, orthodontia expense, or elective surgery or treatment shall be incurred without the prior consent of [defendant], which consent shall not be unreasonably withheld.

. . . .

And that, should the children need any elective surgery, psychiatric or psychological care, [plaintiff] shall notify [defendant] of such need, and [defendant] shall have the right to select a qualified professional in the same field as the professionals selected by [plaintiff] to examine the children and determine whether or not such treatment is reasonably necessary. If it is determined that it is reasonably necessary, then the [defendant] shall provide and pay for the reasonable cost of the same. If the [plaintiff's] professional and the one selected by [defendant] shall not agree that the same is reasonably necessary, or as to the reasonable cost or expense thereof, this issue shall be submitted to the [Connecticut Superior Court] for a determination.

. . . .

And that, all of [defendant's] obligations hereunder for the benefit of the minor children shall terminate when [defendant] is no longer obligated to support or educate the children under the orders of this decree or [defendant's] death, whichever is earlier.

. . . .

Subsequent to the parties' divorce and entry of the Connecticut Order, plaintiff and the two children moved to North Carolina in 1989.

Plaintiff remarried in 1995. Plaintiff testified that Greg entered the University of North Carolina at Wilmington in 1996 and was still enrolled at the time of trial, and Pierre attended Cape Fear Community College from 1997 through 2000.

Plaintiff testified that in 1997 a dispute arose between plaintiff and defendant concerning their respective obligations to pay expenses incurred by Greg and Pierre while the children were in college. Plaintiff commenced the present litigation in October 1998 by filing a complaint alleging that, pursuant to the Connecticut Order, (1) defendant was liable for a greater share of the children's college-related expenses than defendant had previously paid; and (2) defendant was obligated to reimburse plaintiff for certain medical expenses plaintiff paid, including expenses incurred by Pierre for psychological and psychiatric treatment. The parties have stipulated that plaintiff properly obtained service on defendant, a German citizen who in 1998 resided in Sofia, Bulgaria, and that the Superior Court for the State of North Carolina, County of Union, had jurisdiction over the parties and the subject matter herein. On 9 December 1998, plaintiff obtained an entry of default against defendant. On 18 January 2000, defendant's motion to set aside the entry of default was denied, and the matter was set for trial to determine the amount of plaintiff's damages.

Following a bench trial at which both parties presented evidence, the trial court entered a judgment on 20 March 2002 awarding plaintiff damages in the amount of $76,758.48 plus interest. In determining the total judgment amount, the trial court made the following pertinent findings of fact:

26. This Court has been called upon to determine the ability of the plaintiff and the defendant to pay the children's expenses while they were obtaining their college education. The [Connecticut Order] entered into by the parties in 1988 requires the Court to consider the assets, liabilities, and incomes of both the plaintiff and the defendant, and the contributions being made by them towards their children's support in determining each party's ability to pay the children's expenses. In making this determination, the Court has considered the plaintiff's estate and indebtedness, referred to above, and that the plaintiff should have earned the sum of $30,664.50 per year during the time that the children were in college. The Court has further considered the estate of the defendant, and the fact that the defendant has become debt free while his children were in college, and has also

considered the defendant's income during the time that the children were in college. The Court also considered all of the children's expenses that either party had paid under the [Connecticut Order] during the time that the children were in college. The Court also considered that of the parties' combined income and income potential, the defendant earned approximately 69% of that amount while the children were in college.

27. The Court finds, in its discretion, that the defendant should have paid $132,118.15 of the children's expenses (not including medical and psychological expenses), but paid $66,710.90. Therefore, the defendant underpaid the sum of $65,407.25, which the plaintiff has paid.

28. The Court further finds that the defendant was solely responsible under the [Connecticut Order] for paying the children's medical expenses while they were enrolled in college, and that the defendant should have paid for Pierre's psychological expenses. Plaintiff has paid the sum of $11,351.23 of the children's medical and psychological expenses, which was the defendant's obligation.

28. [sic] Based on the above, the Court finds that the defendant owes plaintiff the sum of $76,758.48, which the defendant should have paid, but the plaintiff paid for the children's expenses.

. . . .

From the judgment entered 20 March 2002, defendant now appeals.

[1] By his first assignment of error, defendant argues the trial court abused its discretion by refusing to admit into evidence the following exhibits: number 31, a 1998 net worth statement listing the total assets of plaintiff and her husband; and numbers 38, 39, and 40, the federal income tax returns filed by plaintiff and her husband in 1997, 1998, and 1999, respectively. Defendant contends this evidence showing the income and estate of plaintiff's husband is relevant because the trial court, in determining plaintiff's appropriate share of the children's college and medical expenses, should have considered plaintiff's access to these assets. We disagree.

At the outset, we note that the parties' respective obligations to pay their children's college and medical expenses are established by the Connecticut Order, which we have examined and find to be in the nature of a consent order for post-majority support. Although entered

in Connecticut, the parties have stipulated that the North Carolina trial court properly exercised its jurisdiction by interpreting the Connecticut Order in order to determine the amount of plaintiff's damages. The appellate courts of both states have held that a consent order establishing a parent's obligation to support his or her children past the age of majority is valid and must be enforced according to contract principles, and that the courts may not modify the obligation set forth therein. *See Harding v. Harding*, 46 N.C. App. 62, 64, 264 S.E.2d 131, 132 (1980); *see also Miner v. Miner*, 48 Conn. App. 409, 417-18, 709 A.2d 605, 609-10 (1998). "[I]f the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209 (1999), *disc. review denied*, 351 N.C. 186, 541 S.E.2d 709 (1999). "It is well-established law that, when a contract is plain and unambiguous on its face, it will be interpreted by the courts as a matter of law," *First Citizens Bank & Tr. Co. v. 4325 Park Rd. Assocs.*, 133 N.C. App. 153, 156, 515 S.E.2d 51, 54 (1999), *disc. review denied*, 350 N.C. 829, 539 S.E.2d 284 (1999), and "the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written," *Atlantic and East Carolina Ry. Co. v. Southern Outdoor Adver.*, 129 N.C. App. 612, 617, 501 S.E.2d 87, 90 (1998) (citations omitted).

The Connecticut Order provides that "to the extent that they are reasonably financially able, the *parties* shall be *solely responsible* for the education of the parties' minor children and shall pay any and all expenses incurred by the children" while they are enrolled in college. The Connecticut Order further states that if the parties cannot agree on their respective support obligations, the court "shall consider the assets, liabilities, and income of *both the Plaintiff and the Defendant*, and the contributions being made *by the parties* toward the children's support" in making this determination. We conclude that by its plain and unambiguous language, the Connecticut Order (1) obligates only the *parties* to pay for their children's expenses, and (2) mandates that only the *parties'* income, assets, and liabilities be considered in resolving the present dispute. Because plaintiff's husband is not a party to this action, the trial court properly excluded as irrelevant the challenged evidence of plaintiff's husband's income and assets. *See* N.C. Gen. Stat. § 8C-1, Rules 401 and 402 (2001). The record indicates substantial evidence of plaintiff's separate income and assets during the relevant time period was tendered to, and properly considered by, the trial court. This assignment of error is without merit.

[2] Defendant next excepts to the trial court's finding that Greg was enrolled in college at the time of the trial below, arguing that this finding was not supported by the evidence. However, the transcript reveals the following testimony by plaintiff:

Q: [Defendant] testified a few minutes ago—if I understood his testimony to be that Greg had not signed up for classes by the deadline. Do you know anything about that? Is Greg enrolled in school now?

A: Yes. He is in school.

Q: In classes?

A: Yeah.

. . . .

In a bench trial, the trial court's findings of fact are conclusive on appeal if there is competent evidence to support them, even though the evidence could be viewed as supporting a different finding. *Stephenson v. Bartlett*, 357 N.C. 301, 309, 582 S.E.2d 247, 252 (2003). Defendant's second assignment of error is overruled.

[3] By his third assignment of error, defendant contends the trial court abused its discretion by ordering him to reimburse plaintiff the full $11,351.23 which the trial court found plaintiff expended for the children's medical, psychological, and psychiatric expenses. Defendant argues he should not be assessed the total cost of these expenses because in some instances plaintiff neither made sure the children used the insurance cards defendant provided to them when obtaining treatment, nor sent copies of the children's medical bills to defendant for processing by his insurance company. We find no merit in this assignment of error.

The Connecticut Order required defendant to maintain the children on his health insurance plan while they were in college. By its clear and unambiguous language, the Connecticut Order also required plaintiff to pay "all unreimbursed reasonable medical, . . . psychiatric, [and] psychological[] . . . expenses" for the children, provided that "no psychiatric, psychological[] . . . treatment shall be incurred" without defendant's prior consent, "which consent shall not be unreasonably withheld." The Connecticut Order also provided that, should either child need psychological or psychiatric care, plaintiff must notify defendant, who is then entitled to seek a second opinion for determination of whether such treatment is reasonably nec-

essary. Finally, the Connecticut Order prohibited either party from preventing or interfering with the processing of any insurance reimbursement claim.

The bulk of the medical expenses for which defendant was ordered to reimburse plaintiff were incurred for Pierre's psychological and psychiatric treatment. Regarding these expenses, the trial court found as follows:

16. [Pierre] has been arrested and convicted of possession of marijuana on at least three occasions[]. . . . In October of 1999, he entered a treatment center. He has also been treated by a psychologist for his problems, who referred him to a psychiatrist. The plaintiff discussed with the defendant Pierre's need for treatment, and the defendant disagreed that he needed treatment. In July, 1999, the Court ordered Pierre to obtain a substance abuse assessment, and he has been ordered to obtain treatment as a condition of probation. . . . [Defendant] has disagreed with Pierre's psychological treatment, but [defendant] has never sought a second opinion as to whether or not Pierre needed treatment.

17. The Court finds that Pierre's psychological treatment was reasonably necessary, and that the expenses incurred by the plaintiff for Pierre's treatment and counseling was reasonably necessary, and that defendant was unreasonable in withholding his consent to psychological treatment. The plaintiff has paid $8590 for psychological treatment services for Pierre before he withdrew from college. The plaintiff has also paid $2761.23 for both children's medical bills, while they have been attending college.

. . . .

Because defendant has not challenged findings of fact numbers 16 and 17, the findings contained therein are deemed to be supported by competent evidence and are conclusive on appeal. *Anderson Chevrolet/Olds v. Higgins*, 57 N.C. App. 650, 653, 292 S.E.2d 159, 161 (1982). We are thus bound by the trial court's findings as to the amounts paid by plaintiff, the reasonableness of Pierre's psychological and psychiatric treatment, and defendant's failure to seek a second opinion as to whether this treatment for Pierre was appropriate. The record evidence indicates defendant simply refused to pay Pierre's psychological and psychiatric expenses because defendant

disputed the appropriateness of this treatment, in violation of the Connecticut Order's plain language.

Likewise, by refusing to reimburse plaintiff for both children's other medical expenses which were not paid by defendant's insurance carrier, defendant violated the Connecticut Order's clear and unambiguous terms. The trial court found that "[o]n many occasions, the plaintiff has not known the defendant's location in order to send medical bills to him. For this reason, many of the children's medical bills were never submitted to the medical insurance carrier for payment." This finding was supported by record evidence tending to show that during the relevant time period, defendant was self-employed as a consultant and that he temporarily lived and worked in various European and Asian countries.

Where the trial court conducts a bench trial and is the finder of fact, the trial court's decision will not be upset on appeal absent an abuse of discretion. Under this standard of review, we defer to the trial court's discretion and will reverse its ruling "only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Because we are unable to conclude that the trial court abused its discretion by ordering defendant to comply with the Connecticut Order and reimburse plaintiff for the total amount of the disputed medical, psychological, and psychiatric expenses, this assignment of error is overruled.

[4] By his final assignment of error, defendant contends the trial court abused its discretion by the methodology it employed to determine the parties' respective abilities to pay the children's college-related expenses. We disagree.

With respect to the children's expenses while attending college, the trial court concluded that "the plaintiff has paid $65,407.25 . . . that the defendant should have paid under the [Connecticut Order], and the defendant owes plaintiff that sum." In support of its conclusion, the trial court made, *inter alia*, the following findings:

> 26. This Court has been called upon to determine the ability of the plaintiff and the defendant to pay the children's expenses while they were obtaining their college education. The [Connecticut Order] . . . requires the Court to consider the assets, liabilities, and incomes of both the plaintiff and the defendant, and the contributions made by them towards their children's

support in determining each party's ability to pay the children's expenses. In making this determination, the Court has considered the plaintiff's estate and indebtedness, . . . and that the plaintiff should have earned the sum of $30,664.50 per year during the time that the children were in college. The Court has further considered the estate of the defendant, and the fact that the defendant has become debt free while his children were in college, and has also considered the defendant's income during the time the children were in college. The Court also considered all of the children's expenses that either party had paid under the [Connecticut Order] during the time that the children were in college. The Court also considered that of the parties' combined income and income potential, the defendant earned approximately 69% of that amount while the children were in college.

27. The Court finds, in its discretion, that the defendant should have paid $132,118.15 of the children's expenses (not including medical and psychological expenses), but paid $66,710.90. Therefore, the defendant underpaid the sum of $65,407.25, which the plaintiff has paid.

. . . .

Our review of the record reveals that over the three days it took to try this matter, the parties introduced numerous documents detailing their respective incomes, assets, and liabilities during the relevant time period. As discussed above, the trial court properly denied defendant's request to put on evidence regarding the income and assets of plaintiff's husband. The trial court made detailed findings as to each parties' average yearly income, assets, and liabilities during the relevant time period, including a finding that an average yearly income of $30,664.50 should be imputed to plaintiff because she was voluntarily underemployed while the children were in college. The trial court then combined defendant's average yearly income with plaintiff's imputed income and determined that defendant earned 69% of the parties' total income while the children were in college.

The parties likewise introduced evidence of hundreds of expenditures each claimed to have made on behalf of Greg and Pierre while they were in college. In its detailed and comprehensive findings, the trial court disallowed some of each parties' claimed expenditures and found that plaintiff spent $124,764.68 for expenses the children incurred while enrolled, while defendant paid $66,710.90. The trial

court then added these figures to obtain a total sum for both parties' college expenditures of $191,475.58. The trial court determined what portion of this amount defendant *should* have paid by taking 69% of this amount, or $132,118.15, and subtracting from it the amount it found defendant *actually* paid, or $66,710.90, for a total amount owed to plaintiff of $65,407.25.

The trial court's award of damages at a bench trial is a matter within its sound discretion, and will not be disturbed on appeal absent an abuse of discretion. *Mullins v. Friend*, 116 N.C. App. 676, 684, 449 S.E.2d 227, 232 (1994). "[I]n order to reverse the trial court's decision for abuse of discretion, we must find that the decision was unsupported by reason and could not have been the result of a competent inquiry." *Hamby v. Hamby*, 143 N.C. App. 635, 638, 547 S.E.2d 110, 112, *disc. review denied*, 354 N.C. 69, 553 S.E.2d 39 (2001). Because we cannot conclude that the trial court's methodology in determining the parties' respective abilities to pay the children's college-related expenses "was unsupported by reason and could not have been the result of a competent inquiry," this assignment of error is without merit.

Affirmed.

Chief Judge EAGLES and Judge HUNTER concur.