Ronald G. Vlach, appellant, v.
Rhonda K. Vlach, appellee.

___ N.W.2d ___

Filed June 21, 2013.    No. S-12-866.

1. **Declaratory Judgments: Appeal and Error.** When a declaratory judgment action presents a question of law, an appellate court decides the question independently of the conclusion reached by the trial court.
2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
3. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.
4. **Statutes: Appeal and Error.** In the absence of a statutory indication to the contrary, an appellate court gives words in a statute their ordinary meaning.
5. **Attorney Fees: Appeal and Error.** A party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when the Nebraska Supreme Court has recognized and accepted a uniform course of procedure for allowing attorney fees.
6. **Declaratory Judgments: Parties.** A declaratory judgment action is to declare the rights, status, or other legal relations between the parties.
7. **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.
8. **Divorce: Attorney Fees: Appeal and Error.** In an action for the dissolution of marriage, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.
9. **Attorney Fees.** An award of attorney fees involves consideration of such factors as the nature of the case, the services performed and results obtained, the length of time required for preparation and presentation of the case, the customary charges of the bar, and general equities of the case.

Appeal from the District Court for Dodge County: Geoffrey C. Hall, Judge. Affirmed.

Donald D. Schneider for appellant.

Susan A. Anderson, of Anderson & Bressman Law Firm, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Stephan, and Cassel, JJ.

Stephan, J.

Ronald G. Vlach brought this declaratory judgment action in 2012. He alleged his 1985 marriage to Rhonda K. Vlach

was invalid because no certificate of marriage was filed with the county clerk. The district court for Dodge County found the marriage was valid and awarded attorney fees to Rhonda. Ronald filed this timely appeal. We affirm the judgment of the district court.

## BACKGROUND

The underlying facts in this case are largely undisputed. Ronald and Rhonda obtained a "License and Certificate of Marriage" form bearing the identifying number "48 - 475" from the Dodge County Court on October 3, 1985. They then participated in a wedding ceremony officiated by a county judge on October 4.

The form referred to above has three sections. The first section is untitled and asks for identifying information about the parties and the officiant. This section of the form before us is mostly completed; only the name of the person performing the ceremony and the names of the witnesses to the ceremony are missing. The second section is entitled "Marriage License." It states, "LICENSE IS HEREBY GRANTED to any person authorized to solemnize marriages according to the laws of said State, to join [the parties] in marriage within Dodge County, Nebraska." The marriage license section of the form requests the names, residences, and dates and places of birth of the parties. It then states, "And the person joining them in marriage is required to make due return of his proceedings to the County Judge of Dodge County within fifteen days." On the form before us, all of the parties' information is included in the marriage license section. In addition, the county judge's name is typed in and the license section of the form is signed by the clerk of the county court.

The third section of the form is entitled "Return of Marriage Ceremony Certificate On License No. 48 - 475" (return). This portion is intended to be completed by the marriage officiant who certifies that he or she joined the parties in marriage in the presence of two witnesses. The return is then to be presented to a county judge and the clerk of the county court for signatures and filing. On the form before us, the return section contains only the name of the county and the marriage

license number. The remainder of the section is blank. It is undisputed that the return was never filed with the State of Nebraska's Department of Health and Human Services, health records management section, previously known as the Bureau of Vital Statistics.

Ronald asked the district court to declare that "no marriage ever existed" because the return was not completed and filed. He asserts that he and Rhonda are not and never have been husband and wife.

In her answer, Rhonda admitted that the parties obtained the marriage license form and that a marriage ceremony occurred. She alleged that the filing of the return is an administrative action and that the failure to do so does not affect the validity of the marriage. She requested that the action be dismissed and that she be awarded attorney fees both pursuant to Neb. Rev. Stat. § 25-824 (Reissue 2008) and "in equity."

Ronald filed a motion for summary judgment. In support of his motion, he offered and the court received (1) a certified copy of the marriage form bearing the completed license but uncompleted return section; (2) a document stating that the State of Nebraska health records management section had no record of the marriage; and (3) Ronald's affidavit, in which he stated that he and Rhonda "held each other out as husband and wife" after the marriage ceremony until his attorney discovered on March 15, 2012, that the return had not been completed.

The court also received several affidavits offered by Rhonda. In one, a former county judge averred that he performed the ceremony and solemnized the marriage of Ronald and Rhonda on October 4, 1985. The judge averred that after the ceremony, he prepared a marriage certificate. The certificate noted the names and addresses of the two witnesses to the marriage and the names, dates of birth, and residences of Ronald and Rhonda. The judge averred that he signed the certificate himself and handed it to Ronald.

In another affidavit, Rhonda averred that she and Ronald were married by the county judge in Fremont, Nebraska, at a ceremony attended by approximately 250 people. At the conclusion of the ceremony, the judge asked the witnesses to

accompany him to a small table at the front of the room, where he asked the witnesses to sign the original marriage certificate. Rhonda's maid of honor confirmed the signing of the certificate at the table. Rhonda averred that when she and Ronald returned from their honeymoon, she asked Ronald what he had done with the original marriage certificate, and he replied that he had placed it in a safe in his office. Rhonda averred that early in the marriage, Ronald retrieved the marriage certificate from the safe to enable Rhonda to travel because she did not have a passport, and that he later insisted that Rhonda return the certificate to him, "claiming that his safe was the most secure location."

In a deposition, Ronald denied that he had the original or a copy of the marriage certificate. Ronald said he had no idea what happened to the marriage license after it was issued. He did not recall whether a marriage certificate was ever signed, and he did not recall ever seeing an original marriage certificate. The court also received the affidavit of Ronald's best man at the wedding, who stated that he did not observe the judge give the certificate to Ronald or Rhonda after the ceremony. The parties stipulated that the entire case could be submitted to the court on the record made at the summary judgment hearing.

The district court entered an order denying Ronald's motion for summary judgment and resolving the merits of the case, which turns on an issue of law: whether a fully executed and duly filed return of a marriage license is a legal requirement for a valid marriage in Nebraska. The court concluded that the requirements for a valid legal marriage, as provided by Neb. Rev. Stat. § 42-104 (Reissue 1984), had been met. The court further determined that the statutes relating to a return of a marriage certificate are "procedural" and "do not constitute substantive requirements for a valid legal marriage under Nebraska law." Finally, the court determined that "the evidence as presented is uncontroverted that the parties have held themselves out as husband and wife since the date of their marriage on October 3, 1985[,] and have continued to do so for the past 26 years." After another evidentiary hearing, the court entered an order awarding Rhonda attorney fees of $7,500 and taxing

costs to Ronald. Ronald appeals from both orders. We moved the appeal to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENTS OF ERROR

Ronald assigns, summarized and restated, that the district court erred in (1) finding that a valid marriage existed, (2) finding that a common-law marriage existed between Ronald and Rhonda, and (3) awarding attorney fees to Rhonda.

## STANDARD OF REVIEW

[1] When a declaratory judgment action presents a question of law, an appellate court decides the question independently of the conclusion reached by the trial court.[2]

[2] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[3]

[3] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.[4]

## ANALYSIS

### Validity of Marriage

The Nebraska statutes governing the formation of a marriage are codified at Neb. Rev. Stat. §§ 42-101 to 42-118 (Reissue 2008). Under the version of § 42-104 in effect in 1985, marriage licenses were issued by county courts.[5] The statute was amended in 1986[6] to provide that marriage licenses be issued by county clerks. The amendment also provided that "[a]pplications for a marriage license made with the county court

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[2] *City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011).

[3] *United States Cold Storage v. City of La Vista*, 285 Neb. 579, ___ N.W.2d ___ (2013).

[4] *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012).

[5] § 42-104 (Reissue 1984).

[6] 1986 Neb. Laws, L.B. 525, § 4.

prior to the operative date of this act [January 1, 1987], shall be processed and licenses shall be issued by the county court according to the law and procedures in effect on the date each application was made."[7]

Thus, we are governed by the law in effect in 1985. At that time, § 42-104 provided that "no marriage hereafter contracted shall be recognized as valid unless [a] license has been previously obtained, and unless such marriage is solemnized by a person authorized by law to solemnize marriages."[8] The current version of the statute is the same except for the additional provision that the license must be "used within one year from the date of issuance."[9]

[4] In the absence of a statutory indication to the contrary, this court gives words in a statute their ordinary meaning.[10] The plain language of § 42-104, both at the time of the Vlachs' application for a marriage license and today, includes only two requirements for a marriage to be valid: the issuance of a marriage license and the subsequent solemnization of the marriage by a person authorized to do so.

And this is how we have construed the statute. In *Collins v. Hoag & Rollins*,[11] we reversed the Workers' Compensation Court's holding that a common-law wife could receive workers' compensation benefits for her deceased common-law husband. This court determined that the statutory language of § 42-104 was "clearly intended to prohibit and make invalid any marriage in this state unless a license was first obtained and the marriage solemnized by a person authorized to solemnize marriages."[12] In a companion divorce case, *Walden v.*

---

[7] *Id.*

[8] § 42-104 (Reissue 1984).

[9] § 42-104 (Reissue 2008).

[10] *Mutual of Omaha Bank v. Murante*, 285 Neb. 747, 829 N.W.2d 676 (2013); *Credit Bureau Servs. v. Experian Info. Solutions*, 285 Neb. 526, 828 N.W.2d 147 (2013).

[11] *Collins v. Hoag & Rollins*, 122 Neb. 805, 241 N.W. 766 (1932).

[12] *Id.* at 808, 241 N.W. at 768.

*Walden*,[13] we affirmed a trial court's determination that there was no valid marriage because there had been no solemnization ceremony as required by § 42-104, even though the parties had cohabited and held themselves out as husband and wife for a considerable period.

It is undisputed that the two requirements for a valid marriage were met in this case. A marriage license was issued, and on the following day, the marriage was solemnized by a county judge authorized to perform marriages. But Ronald contends that a third requirement was not met: the execution and filing of the license and return. His argument is based on the following statutes as they existed in 1985. Section 42-108 provided that persons performing a marriage ceremony

> shall make a return of his or her proceedings in the premises, showing the names and residences of at least two witnesses who were present at such marriage, which return shall be made to the county judge who issued the license within fifteen days after such marriage has been performed, which return the county judge shall record or cause to be recorded in the same book where the marriage license is recorded.

Section 42-106 required county judges to maintain records of marriages licenses issued, and § 42-112 provided that county judges "shall record all such returns of such marriages in a book to be kept for that purpose within one month after receiving the same." Section 42-115 required religious societies joining their members in marriage to complete and file a certificate of the marriage in a similar fashion.

Ronald argues that because these statutes use the word "shall" in referring to the obligation of the officiant to complete and file the return, the marriage is invalidated if the officiant does not comply. We disagree. If the Legislature intended such an outcome, it could have included the completion and filing of the return as a third requirement in § 42-104. We find no indication in the statutes that the Legislature intended to penalize the parties to a duly licensed and solemnized marriage

---

[13] *Walden v. Walden*, 122 Neb. 804, 241 N.W. 766 (1932).

for an officiant's subsequent failure to complete and file the return.[14] The purpose of the return is to provide an official record that the solemnization ceremony was performed. This is evident based on § 42-116, which provides that the original or a certified copy of the license "shall be received in all courts and places as presumptive evidence of the fact of such marriage." In the absence of the certificate, parties would be required to prove the existence of the marriage by some other means, as they did in this case.

We agree with the district court that all statutory requirements were met and that the marriage of Ronald and Rhonda was valid. For completeness, we address Ronald's argument that the district court erred in determining that the parties had entered into a common-law marriage. We agree that common-law marriages are not recognized in Nebraska.[15] But we do not read the district court's order as recognizing a common-law marriage. Rather, it was simply stating that the parties had held themselves out as husband and wife. The court specifically determined that the legal requirements for a valid marriage as set forth in § 42-104 were met. As noted above, we agree.

## Attorney Fees

[5] Having determined that the district court correctly decided the merits of the case in Rhonda's favor, we turn to Ronald's argument that it abused its discretion in awarding her attorney fees in the amount of $7,500. A party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when the Nebraska Supreme Court has recognized and accepted a uniform course of procedure for allowing attorney fees.[16] Rhonda sought an award of attorney fees both pursuant to § 25-824, which allows attorney fees in frivolous actions, and in equity. The district court did not specify the legal basis for its award of attorney fees.

[14] See § 42-113 (Reissue 1984).

[15] See, *Randall v. Randall*, 216 Neb. 541, 345 N.W.2d 319 (1984); *Ropken v. Ropken*, 169 Neb. 352, 99 N.W.2d 480 (1959).

[16] *Eikmeier v. City of Omaha*, 280 Neb. 173, 783 N.W.2d 795 (2010); *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010).

[6,7] A declaratory judgment action is to declare the rights, status, or other legal relations between the parties.[17] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.[18] Here, the nature of the declaratory judgment action is the determination of the marital status of the parties. Accordingly, we conclude that entitlement to attorney fees should be governed by the law applicable to the dissolution of marriage.

[8,9] In an action for the dissolution of marriage, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.[19] Such an award of attorney fees involves consideration of such factors as the nature of the case, the services performed and results obtained, the length of time required for preparation and presentation of the case, the customary charges of the bar, and general equities of the case.[20]

Based on our review of the record, we find no abuse of discretion in the award of attorney fees under the district court's equity jurisdiction in domestic relations matters. Accordingly, we need not determine whether Ronald's action was "frivolous" within the meaning of § 25-824.

## CONCLUSION

For the reasons discussed, we affirm the judgment of the district court.

AFFIRMED.

CONNOLLY and MILLER-LERMAN, JJ., participating on briefs.

MCCORMACK, J., not participating.

---

[17] Neb. Rev. Stat. § 25-21,149 (Reissue 2008); *Bentley v. School Dist. No. 025*, 255 Neb. 404, 586 N.W.2d 306 (1998).

[18] *American Amusements Co. v. Nebraska Dept. of Rev.*, 282 Neb. 908, 807 N.W.2d 492 (2011); *Wetovick v. County of Nance, supra* note 16.

[19] *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008); *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006).

[20] See *id.*