Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/06/2018 09:14 AM CDT

Mark Alan Carlson, appellant, v.
Karen Sue Carlson, appellee.
___ N.W.2d ___

Filed April 6, 2018.    No. S-17-064.

1.  **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.
2.  **Divorce: Judgments: Appeal and Error.** The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.
3.  **Declaratory Judgments: Appeal and Error.** When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.
4.  **Divorce: Judgments: Property Settlement Agreements: Contracts.** Once a property settlement agreement has been incorporated into a dissolution decree, the contractual character of the agreement is subsumed into the court-ordered judgment. At that point, the court and the parties are no longer dealing with a mere contract between the parties.
5.  **Divorce: Judgments: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.
6.  **Judgments: Appeal and Error.** Whether a judgment is ambiguous is a question of law for which the appellate court has an obligation to reach a conclusion independent from the lower court's conclusion.
7.  **Judgments: Words and Phrases.** Ambiguity in a judgment exists when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
8.  **Judgments: Parties.** The fact that the parties advance differing interpretations does not, by itself, compel the conclusion that a judgment is ambiguous.

9. **Divorce: Judgments: Appeal and Error.** Even if ambiguity exists in a dissolution decree, its meaning nevertheless presents a question of law that an appellate court reviews de novo.

10. **Courts: Child Support: Minors.** As a general rule, absent agreement of the parties, a Nebraska district court cannot order a party to pay child support beyond the age of majority.

11. **Courts: Divorce: Jurisdiction: Property Settlement Agreements: Child Support: Minors.** In the exercise of its broad jurisdiction over marriage dissolutions, a district court retains jurisdiction to enforce all the terms of approved property settlement agreements, including agreements made to support children of the marriage past the age of majority.

12. **Courts: Property Settlement Agreements: Child Support: Minors.** If the parties voluntarily include a provision for post-majority child support in an approved property settlement agreement, a district court has the authority to enforce that provision.

13. **Modification of Decree: Property Settlement Agreements: Child Support: Minors.** A provision for post-majority child support in an approved property settlement agreement can be modified either as agreed to by the parties in the agreement or according to the general standard for modifying an approved property settlement agreement under Nebraska law.

14. **Divorce: Motions to Vacate: Modification of Decree: Property Settlement Agreements.** Where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions as to real and personal property and maintenance will not thereafter be vacated or modified in the absence of fraud or gross inequity.

15. **Divorce: Attorney Fees: Appeal and Error.** In an action for the dissolution of marriage, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed.

Adam E. Astley and Kathryn D. Putnam, of Astley Putnam, P.C., L.L.O., for appellant.

Benjamin M. Belmont and Wm. Oliver Jenkins, of Brodkey, Peebles, Belmont & Line, L.L.P., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

STACY, J.

This appeal arises from a dispute over the meaning of provisions in a divorce decree and incorporated property settlement agreement (PSA) regarding payment of post-majority child support. The district court construed the decree and incorporated PSA to require the father to pay post-majority child support if certain conditions were met, and it denied the father's request to modify such support. Finding no error, we affirm.

FACTS

Mark Alan Carlson and Karen Sue Carlson married in 1994 and divorced in March 2008. Three children were born during the marriage. At the time of the divorce, the children were 6, 8, and 10. Mark and Karen are both physicians, but Karen did not actively practice medicine during most of their marriage.

The parties represented themselves during their divorce. Through mediation, they reached an agreement on the division of their assets and debts, the custody and support of their children, and the payment of alimony. The mediator drafted the parties' PSA and the dissolution decree. The record on appeal does not include the hearing at which the parties proved up their PSA and asked the court to approve it, but it does contain the signed and notarized PSA, as well as the consent decree entered by the court.

As relevant here, the parties agreed they would have joint legal custody of the children and Karen would have physical custody. Mark agreed to pay both child support and alimony. The decree addressed child support as follows:

[Mark] shall pay . . . child support . . . commenc[ing] on the first day of the first month following the entry of the decree and shall continue to [pay] each month thereafter, until the child reaches the age of majority under Nebraska law, becomes emancipated, becomes

self-supporting, marries or dies, or until further order of
the court.

The decree also recited that the parties had negotiated a PSA
which the court had examined and "found to be fair and rea-
sonable and conscionable." According to the decree, a signed
copy of the PSA had been filed with the clerk and the agree-
ment was "incorporated [in the decree] with the same force and
effect as if set forth in this decree in its entirety." The decree
further recited that the "parties' [PSA] shall be enforced by all
remedies available for the enforcement of a judgment, includ-
ing contempt proceedings." No party appealed from the entry
of the decree.

INCORPORATED PSA

Section 3 of the PSA is titled "Child Support and Expenses,
Educational Expenses, Health Insurance and Care Expenses
and Life Insurance." It provides in relevant part:

3.01 Terms and Definitions.

. . . .

(2) Age of Majority The age of majority for most legal
purposes is 19 and generally defines when child support
is terminated unless the parties agree otherwise, or cir-
cumstances set by law apply.

. . . .

(4) Support Past Age 19: A child will not be deter-
mined to be emancipated and child support may continue
past age 19 in the following circumstances:

a. If a child attends college or vocational training,
child support may continue until age 27 or graduation
from college, trade school, or graduate school, which-
ever occurs first. (The child must be regularly attending
college (enrolled in 12 or more credit hours of course
work per semester) or a vocational school. (However,
the parties intend to allow some flexibility in the child's
college attendance, therefore a child may have up to
two (2) semester[s] of nonattendance at school, not

including summer vacations, without being understood to be emancipated.[)]

. . . .

3.02 Child Support

(1) MARK shall pay to KAREN the amount of $2,400.00 per month for the support of three children, $2,089.00 per month when two children remain eligible for support and $1,468.00 per month when only one child is eligible for child support. Child support will be payable until each child reaches majority, becomes emancipated, marries or dies or until further order of the court as provided by law.

For the sake of completeness, we note the PSA contains a definition of "emancipation" which does not expressly reference post-majority child support. Neither party suggests that provision is determinative of the issues presented, so we do not address it. We also note the PSA addressed payment of post-majority child support if a child becomes mentally or physically incapacitated, but the parties did not seek a declaratory judgment regarding the interpretation of such provisions so we express no opinion thereon.

COMPLAINT TO MODIFY

In March 2010, Mark filed a complaint to modify the decree as it regarded post-majority child support, alimony, health care expenses, and college expenses. He claimed, inter alia, that the court lacked jurisdiction to order child support after a child attained the age of majority, and he claimed he should not be required to pay both post-majority child support and college expenses for the same child.

In January 2011, the parties stipulated to an order modifying the decree to, among other things, reduce Mark's alimony payment and increase his monthly child support obligation. The stipulated order reflected that Mark had withdrawn "without prejudice" his request for an order terminating his obligation to pay post-majority child support. And the stipulated order

expressly provided that all provisions of the decree and PSA "not specifically altered by this Order shall remain in full force and effect."

## CONTEMPT PROCEEDINGS

In January 2015, the parties' oldest child turned 19. She was a full-time college student at the time. Mark stopped paying child support for this child, and Karen filed an application to show cause why Mark should not be held in contempt of court for willfully failing to pay post-majority child support.

At the show cause hearing, both Mark and Karen were represented by counsel. After a meeting in chambers between the court and counsel, Karen withdrew her contempt application and instead filed the complaint for declaratory judgment which is at issue in this appeal.

## COMPLAINT AND COUNTERCLAIM
### FOR DECLARATORY JUDGMENT

Karen's complaint sought a declaration of the rights, duties, and obligations of the parties under the dissolution decree as it regarded post-majority child support. Specifically, she sought a declaration that under the PSA incorporated into the decree, Mark had an obligation to continue paying child support past the age of majority for a child attending college.

In a counterclaim, Mark also sought a declaratory judgment regarding post-majority child support. As relevant to the issues on appeal, Mark sought a declaration that the provisions regarding post-majority child support were unenforceable or, in the alternative, that any obligation to pay post-majority child support was "completely discretionary on the part of the person paying it." Alternatively, Mark sought modification of the decree to relieve him of any post-majority child support obligation, alleging there had been a material change in circumstances.

Both parties moved for summary judgment on their requests for declaratory judgment. The trial court denied both motions and set the matter for trial.

Trial

By the time of trial, two of the parties' children had reached the age of majority, and each was a full-time college student. At trial, the parties were allowed to present extrinsic evidence as to the meaning of the PSA incorporated into the decree. Neither party had a clear recollection of how the language regarding post-majority child support came to be in the PSA. According to Karen, the mediator brought up the issue of supporting the children through college, and Mark had no disagreement, so the provisions regarding post-majority support were included in the PSA with "no discussion." Mark testified he intended the agreement to be flexible and "leave[] the door open" to paying post-majority child support if Karen was unable to return to employment as a physician after the divorce. The attorney who mediated the property settlement agreement invoked the statutory privilege[1] and refused to testify about mediation communications.

Ultimately, the district court concluded that the decree and incorporated PSA obligated Mark to pay post-majority child support for any child regularly attending college, trade school, or graduate school, until the child attained the age of 27 or graduated, whichever first occurred. Regarding Mark's complaint to modify, the court noted the agreement to pay post-majority child support was contained in the parties' PSA which had been approved by the court and incorporated into the decree. It thus reasoned the approved PSA could not be vacated or modified in the absence of fraud or gross inequity. The court found Mark had neither alleged nor offered evidence of fraud or gross inequity, and it denied his complaint to modify.

The court entered an order granting Karen's request for declaratory judgment, denying Mark's counterclaims, and awarding Karen attorney fees and costs in the amount of $3,500. Mark filed this timely appeal, which we removed to

---

[1] See Neb. Rev. Stat. § 25-2933 (Reissue 2016).

our docket pursuant to our authority to regulate the caseloads of the appellate courts of this state.[2]

## ASSIGNMENTS OF ERROR

Mark assigns that the district court erred in (1) finding the decree was ambiguous, (2) interpreting the decree and property settlement to require post-majority child support, (3) granting declaratory relief to Karen, (4) failing to consider his request for modification of the post-majority support obligation, and (5) awarding $3,500 in attorney fees to Karen.

## STANDARD OF REVIEW

[1,2] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.[3] The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.[4]

[3] When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.[5]

## ANALYSIS

Before addressing the assignments of error we address two threshold issues.

---

[2] Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

[3] *Vlach v. Vlach*, 286 Neb. 141, 835 N.W.2d 72 (2013); *American Amusements Co. v. Nebraska Dept. of Rev.*, 282 Neb. 908, 807 N.W.2d 492 (2011).

[4] *Rice v. Webb*, 287 Neb. 712, 844 N.W.2d 290 (2014).

[5] *Board of Trustees v. City of Omaha*, 289 Neb. 993, 858 N.W.2d 186 (2015); *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010).

### Use of Declaratory Judgment
### to Construe Decree

Both parties sought a declaratory judgment interpreting their rights and obligations under the consent decree and incorporated PSA. Our case law has generally permitted the use of declaratory judgment actions to resolve genuine disputes over the meaning of language in a dissolution decree.[6] But parties have also resolved similar issues via complaints to modify,[7] contempt proceedings,[8] motions to enforce the judgment,[9] and motions to determine amounts due under the decree.[10] Without endorsing any particular procedure, we observe the general rule that an action for declaratory judgment does not lie where another equally serviceable remedy is available.[11] In this case, no party has challenged the availability of declaratory relief or alleged that a more serviceable remedy is available. We therefore assume, without deciding, that it was proper for the district court to entertain the parties' requests for declaratory judgment.

### Parties' Subjective Intent
### Is Irrelevant

In addressing the parties' dispute over the meaning of the decree and incorporated PSA, the district court and the parties

---

[6] *Buhrmann v. Buhrmann*, 231 Neb. 831, 835, 438 N.W.2d 481, 484 (1989) ("[w]here there is a genuine controversy between the parties as to the meaning of language in a decree of dissolution, and the appeal period has passed, a proper method to resolve the controversy is by a separate action for declaratory relief"). See, *Jensen v. Jensen*, 275 Neb. 921, 750 N.W.2d 335 (2008); *Hohertz v. Estate of Hohertz*, 19 Neb. App. 110, 802 N.W.2d 141 (2011).

[7] *Boyle v. Boyle*, 12 Neb. App. 681, 684 N.W.2d 49 (2004).

[8] *Blaine v. Blaine*, 275 Neb. 87, 744 N.W.2d 444 (2008).

[9] *Rice v. Webb, supra* note 4.

[10] *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006).

[11] *Mansuetta v. Mansuetta*, 295 Neb. 667, 890 N.W.2d 485 (2017); *Northwall v. State*, 263 Neb. 1, 637 N.W.2d 890 (2002).

relied, in part, on traditional contract principles. For example, the court found the PSA was ambiguous regarding the payment of post-majority child support, and it thus allowed the admission of extrinsic evidence of the parties' intent. As a general matter, if a contract is ambiguous, the meaning of the contract is a question of fact and a court may consider extrinsic evidence to determine the meaning of the contract.[12] But in the present case, we are not dealing with a contract; we are dealing with a judgment.

The intentions of the parties regarding the PSA may have been relevant when the dissolution court was examining the agreement to determine whether it was fair and reasonable, not unconscionable, and in the childrens' best interests. But once the PSA was approved by the court and incorporated into the decree, it became a judgment of the court.[13] Thereafter, the parties' subjective interpretations and intentions were irrelevant to the court's declaration of the meaning of the decree.[14]

[4] In both *Ryder v. Ryder*[15] and *Rice v. Webb*,[16] this court specifically disapproved of the application of contract principles to a PSA that had been incorporated into a dissolution decree. In *Ryder*, we held:

> Once a property settlement agreement has been incorporated into a dissolution decree, the contractual character of the agreement is subsumed into the court-ordered judgment. "'At that point the court and the parties are no longer dealing with a mere contract between the parties.'"

---

[12] *David Fiala, Ltd. v. Harrison*, 290 Neb. 418, 860 N.W.2d 391 (2015).

[13] See, *Ryder v. Ryder*, 290 Neb. 648, 861 N.W.2d 449 (2015); *Rice v. Webb, supra* note 4.

[14] See *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986) (once decree becomes final, what parties thought it meant is irrelevant; meaning of decree is question of law determined from four corners of decree).

[15] *Ryder v. Ryder, supra* note 13.

[16] *Rice v. Webb, supra* note 4.

. . . [W]hen a decree is ambiguous, "the parties must bring some form of action which raises the issue and thereby requires the court before whom the matter is then pending to resolve the issue as a matter of law in light of the evidence and meaning of the decree as it appears."[17]

Thus, in the present case, we are considering the meaning of a judgment rather than a contract.[18]

[5] A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.[19] With this standard in mind, we address the assignments of error.

### No Error in Finding
### Decree Ambiguous

Mark assigns error to the trial court's finding that the terms of the decree and incorporated PSA were ambiguous. He concedes the documents are poorly drafted but suggests that "after reviewing the document five or six times, a single meaning becomes clear."[20] Mark suggests that "when read in a vacuum [the language of the decree] is susceptible to only one meaning, which is that child support ends when each child reaches the age of majority under Nebraska law, becomes emancipated, becomes self-supporting, marries or dies, or until further order of the court."[21] We understand this argument to suggest that if the decree is construed without reference to the language of the incorporated PSA, there is no ambiguity. But we reject the invitation to construe the decree without considering the terms of the PSA that was expressly incorporated into the decree at the parties' request.

---

[17] *Ryder v. Ryder, supra* note 13, 290 Neb. at 656-57, 861 N.W.2d at 456.

[18] See *Rice v. Webb, supra* note 4.

[19] *Id.*

[20] Brief for appellant at 17.

[21] *Id*. at 16.

[6,7] Whether a judgment is ambiguous is a question of law for which the appellate court has an obligation to reach a conclusion independent from the lower court's conclusion.[22] Ambiguity in a judgment exists when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[23]

[8] We agree with the district court that the decree and incorporated PSA are ambiguous regarding the parties' rights and obligations concerning payment of post-majority child support. The fact that the parties advance differing interpretations does not, by itself, compel the conclusion that the PSA is ambiguous.[24] But we agree that the conflicting interpretations advanced by Mark and Karen illustrate an ambiguity in the PSA which necessitated construction.

As it regards the payment of post-majority child support, the operative language in the PSA provides:

> A child will not be determined to be emancipated and child support may continue past age 19 in the following circumstances:
>
> a. If a child attends college or vocational training, child support may continue until age 27 or graduation from college, trade school, or graduate school, whichever occurs first.

Mark argues the phrase "may continue" indicates that payment of post-majority support is discretionary and allows him the flexibility to decide whether such support is necessary under the circumstances. Karen argues the language creates an affirmative obligation to pay post-majority child support so long as the conditions of college attendance are satisfied. Although we ultimately reject Mark's interpretation, we agree the operative language of the PSA is susceptible to at least two reasonable but conflicting interpretations, and we thus

---

[22] *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015).

[23] See *Rice v. Webb, supra* note 4.

[24] See *Strunk v. Chromy-Strunk, supra* note 10.

agree with the district court that it is ambiguous.[25] Mark's first assignment has no merit.

[9] We also reject as incorrect the suggestion in Mark's briefing that the presence or absence of ambiguity in a decree affects our standard of review. This court has long held that the meaning of a dissolution decree presents a question of law,[26] and we recently clarified that even if ambiguity exists in a dissolution decree, its meaning nevertheless presents a question of law that we review de novo.[27]

### No Error in Construing Decree

Mark's main contention on appeal is that the district court erred in construing the decree and incorporated PSA to require him to pay post-majority child support under certain circumstances. Mark contends the court should have interpreted the decree to provide that his obligation to pay child support ends when the children reach the age of 19 and that any continued payment of support post-majority is entirely discretionary. The district court rejected this construction. After our independent review of the four corners of the decree and incorporated PSA,[28] we do too.

The parties' primary disagreement relates to the proper interpretation of the phrase "may continue" as used in the operative provision of the PSA:

(4) Support Past Age 19: A child will not be determined to be emancipated and child support may continue past age 19 in the following circumstances:

a. If a child attends college or vocational training, child support may continue until age 27 or graduation from college, trade school, or graduate school, whichever occurs first. (The child must be regularly attending

---

[25] See *Rice v. Webb, supra* note 4.

[26] See *Strunk v. Chromy-Strunk, supra* note 10.

[27] *Ryder v. Ryder, supra* note 13.

[28] See *id.*

college (enrolled in 12 or more credit hours of course work per semester) or a vocational school. (However, the parties intend to allow some flexibility in the child's college attendance, therefore a child may have up to two (2) semester[s] of nonattendance at school, not including summer vacations, without being understood to be emancipated.[)]

Mark suggests the term "may" is permissive and affords him the discretion to pay post-majority child support if he thinks it is needed. We reject this construction not only because it invites construing the judgment to be conditional upon Mark's decision to pay,[29] but because there is no support for such a construction within the four corners of the judgment.

Instead, considering the entirety of the decree and incorporated PSA, we find the parties agreed to an affirmative obligation to pay post-majority child support so long as the agreed-upon conditions precedent are satisfied. Those conditions include that the child be regularly attending college, trade school, or graduate school and not have attained the age of 27. This construction is compelled by several provisions within the judgment.

Section 3.01(2) of the PSA recognizes that child support generally terminates when the child turns 19 "unless the parties agree otherwise." Section 3.01(4) then reflects the parties' agreement that the children "will not be determined to be emancipated and child support may continue past the age of 19" under specific enumerated circumstances. Within this framework, the phrase "child support may continue past age 19" in § 3.01(4) is not permissive or discretionary; rather, it reflects the prior acknowledgment that ordinarily child support terminates at age 19.

That the payment of post-majority support is not discretionary is further supported by language in the PSA acknowledging the possibility that payment of post-majority child

---

[29] See *Strunk v. Chromy-Strunk, supra* note 10.

support will overlap with the separate obligation to contribute to college expenses under the agreement. In that regard, the PSA provides:

3.03 Educational Expenses: Trade School or College Education Costs and Expenses

(1) The parties agree that should any of the children desire to attend college (trade or vocational school after high school) and be accepted to a school, the parties shall be responsible to provide for the costs and expenses of that education in an amount no more than the cost of an education at the primary state college or university (University of Nebraska-Lincoln) in the state where the children may reside at the time the child has been accepted, regardless of where he/she may attend school or college.

(2) This Agreement contemplates a four-year undergraduate college education that may extend beyond the age of majority as long as the child is in good standing as a student, but in no event beyond the child's 23rd birthday.

. . . .

(5) The parties understand that amounts paid for the college educations of the children still may not fully cover other child care expenses including car insurance, clothing, recreation, or time spent at home during vacations. Alternatively, the amounts being paid in child support by one party to the other party may duplicate amounts being paid for college room and board. The parties agree to negotiate, or if necessary, mediate the balance between payment of child support and college costs and expenses if and when a child attends college.

(6) These provisions are intended to set out the minimum amounts obliged to be paid by a parent to assure that the children obtain further training or an undergraduate college education, should the children be capable and desire to so do. These provisions are not intended to

limit the additional contribution either parent may volun-
tarily make toward a child's undergraduate or graduate
school education.

These provisions not only acknowledge the potential for
duplication between payment of post-majority child support
and payment of college expenses, but also express the intent
of the parties to "set out the minimum amounts obliged to be
paid" to continue supporting a child beyond the age of majority
who wishes to pursue further education.

We hold that the decree and incorporated PSA affirmatively
obligate Mark to pay post-majority child support so long as the
conditions set forth in § 3.01(4) of the PSA are met. We find
this construction is supported by the language of the judgment,
can be harmonized with the standard child support language
set out in the decree, and results in a sensible construction that
is consistent with the best interests of the children.

### No Error in Denying
### Complaint to Modify

In a counterclaim, Mark sought to modify the decree based
on a material change in circumstances in the event the court
determined he was obligated to pay post-majority child sup-
port. The district court denied his request to modify. It rea-
soned that the post-majority child support was agreed to in
a PSA that had been approved by the court and incorporated
into the decree and as such it could be vacated or modified
only upon a showing of fraud or gross inequity.[30] The court
concluded Mark had failed to allege or prove fraud or gross
inequity, and it denied the modification.

On appeal, Mark argues the court applied the wrong legal
standard. He claims that rather than being required to show
fraud or gross inequity, he should have been permitted to mod-
ify the terms of his post-majority child support upon showing
a material change in circumstances. In making this argument,

---

[30] See *Ryder v. Ryder, supra* note 13.

Mark relies on the statutory provisions[31] and case law[32] governing modification of statutory child support for minors.

But the present case does not involve modification of statutory child support for a minor and requires us to answer a different question: Under what circumstances can a party seek to vacate or modify an approved PSA that requires payment of post-majority child support? To answer this question, we look to our jurisprudence on post-majority child support.

[10-12] As a general rule, absent agreement of the parties, a Nebraska district court cannot order a party to pay child support beyond the age of majority.[33] In *Zetterman v. Zetterman*,[34] however, we held that a court can enforce an approved PSA voluntarily entered into by the parties which provides for post-majority child support. We held that a district court, "in the exercise of its broad jurisdiction over marriage dissolutions, retains jurisdiction to enforce all the terms of approved property settlement agreements, including agreements made to support children of the marriage past the age of majority."[35] Thus, pursuant to *Zetterman*, if the parties voluntarily include a provision for post-majority child support in an approved PSA, a district court has the authority to enforce that provision.

We have not yet addressed whether a district court has the authority to modify such a provision and, if it does, what standard applies to the modification. The general consensus of other jurisdictions that, like Nebraska, hold that a court lacks authority to impose an obligation to pay post-majority child support but can enforce an agreement to pay such support

---

[31] See Neb. Rev. Stat. § 42-364 (Reissue 2016).

[32] See, *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014); *Caniglia v. Caniglia*, 285 Neb. 930, 830 N.W.2d 207 (2013).

[33] See *Foster v. Foster*, 266 Neb. 32, 662 N.W.2d 191 (2003).

[34] *Zetterman v. Zetterman*, 245 Neb. 255, 512 N.W.2d 622 (1994).

[35] *Id*. at 261, 512 N.W.2d at 625.

made via an approved PSA is that post-majority child support can be modified using either the standard adopted by the parties in their agreement or the standard applied in that jurisdiction to modify an approved PSA.[36] The rationale for such a rule is that the court could not have imposed the post-majority child support obligation in the first instance, so it lacks the authority to modify it as a child support obligation.[37]

[13] We agree with this rationale and find it is consistent with our holding in *Zetterman*.[38] We thus hold that a provision for post-majority child support in an approved PSA can be modified either as agreed to by the parties in the agreement[39] or according to the general standard for modifying an approved PSA under Nebraska law.

In this case, neither the decree nor the incorporated PSA contained provisions for modifying post-majority child support. Thus, Mark's request for modification of post-majority support will be governed by the general standard for modifying an approved PSA under Nebraska law.

[14] This court has consistently held that where parties to a divorce action voluntarily execute a PSA which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions as to real and personal property and maintenance will not thereafter be vacated or modified in the absence of fraud or gross inequity.[40]

---

[36] See, *Van Camp v. Van Camp*, 333 Ark. 320, 969 S.W.2d 184 (1998); *Miner v. Miner*, 48 Conn. App. 409, 709 A.2d 605 (1998); *Katz v. Katz*, 258 Ga. 184, 366 S.E.2d 766 (1988); *Helms v. Schultze*, 161 N.C. App. 404, 588 S.E.2d 524 (2003).

[37] *Id.*

[38] *Zetterman v. Zetterman, supra* note 34.

[39] See, also, Neb. Rev. Stat. § 42-366(7) ("[e]xcept for terms concerning the custody or support of minor children, the decree may expressly preclude or limit modification of terms set forth in the decree").

[40] *Ryder v. Ryder, supra* note 13; *Whitesides v. Whitesides*, 290 Neb. 116, 858 N.W.2d 858 (2015).

The district court correctly applied this standard to Mark's complaint to modify the post-majority child support provision and properly found he had not met his burden of proof in that regard. Mark's arguments to the contrary are without merit.

### NO ERROR IN AWARD
### OF ATTORNEY FEES

[15] The district court awarded Karen $3,500 in attorney fees and costs. Mark assigns this as error. In an action for the dissolution of marriage, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.[41] Having reviewed the parties' arguments and the record, we find no abuse of discretion in the award of attorney fees.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

KELCH, J., not participating in the decision.
WRIGHT, J., not participating.

---

[41] *Vlach v. Vlach, supra* note 3.